**UNITED STATES of America**
**Appellant,**

v.

**STATE OF NEW JERSEY; VIOLENT**
**CRIMES COMPENSATION**
**BOARD, Appellees.**

**No. 86–5903.**

United States Court of Appeals,
Third Circuit.

Argued July 16, 1987.

Decided Oct. 26, 1987.

Rehearing and Rehearing En Banc
Denied Nov. 25, 1987.

Thomas W. Greelish, U.S. Atty., Vincent E. Gentile (argued), Asst. U.S. Atty., Neil R. Gallagher, Sp. Asst. U.S. Atty., Newark, N.J., Richard K. Willard, Asst. Atty. Gen., Samuel A. Alito, Jr., U.S. Atty., Leonard Schaitman, Edward R. Cohen, Appellate Staff, Civil Div., U.S. Dept. of Justice, Washington, D.C., for appellant.

W. Cary Edwards, Atty. Gen., James J. Ciancia, Asst. Atty. Gen., Susan Doppelt LaPoff (argued), Deputy Atty. Gen., Trenton, N.J., for appellees.

Before SLOVITER and STAPLETON, Circuit Judges and SHAPIRO, District Judge[*]

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

In this appeal, the United States argues that 38 U.S.C. § 629 ("Section 629") entitles it to compensation from New Jersey's Violent Crimes Compensation Board ("the Board") for medical care that the Veterans Administration ("the VA") provided to two veterans who were victims of violent crimes in New Jersey. We will reverse the district court's judgment in favor of the Board and remand for the entry of an appropriate declaratory judgment. We hold that Section 629 prohibits denial of a claim, made under a state victims' compensation statute, solely because the VA provided the medical care without cost to the crime victim. The administrators of such a state statute must honor such a claim if "the veteran (or the provider of the care or services) would be eligible to receive payment for such care or services ... if the care or services had not been furnished by a department or agency of the United States." 38 U.S.C.A. § 629(a)(1) (West Supp.1987).

### I.

In May, 1982, Charles Watson was beaten on the head with a baseball bat in Newark, New Jersey. Watson, a veteran entitled to medical care by the VA without charge, was hospitalized at the VA Medical Center in East Orange, New Jersey. According to the VA, the cost for the treatment given to Watson was $8,123.

In March, 1985, Reginald Brewer, a resident of New Jersey, was mugged and thrown to the ground by three assailants as he walked home from work. He suffered a broken hip. Brewer, a veteran eligible for care by the VA without charge, was hospitalized at the VA Medical Center in East Orange. The VA states that the cost of Brewer's medical treatment was $10,225.

The VA filed timely claims with the Board for the cost of the services rendered to Watson and Brewer. In addition, Watson filed a claim with the Board for $1,230, the cost of a hearing aid he had purchased. Injuries from the May, 1982, beating led to the need for a hearing aid.

The Board rejected the claims made by the VA for the medical care of Watson and Brewer. The VA received two virtually identical letters from counsel for the Board. Each letter stated:

I have been advised by Kenneth W. Welch, Chairman, that the New Jersey Violent Crimes Compensation Board does not consider itself obligated to make payments to V.A. hospitals for treatment rendered to veterans who are crime victims.

The treatment rendered to veterans who are crime victims is without charge to the veteran and therefore does not constitute an out of pocket lawfully reimbursable expense pursuant to the requirements of N.J.Law, N.J.S.A. 52:4B–12 and N.J.S.A. 52:4B–19.

In the event that the issue requires litigation we will respond to the matter in greater detail at that time.

The position of the New Jersey Violent Crimes Compensation Board is in accordance with a substantial number of similarly constituted victim compensation programs throughout the country.

App. at 56, 83. The Board, after finding that Watson "was the innocent victim of a violent crime" and that "other sources" had paid $200 of Watson's hearing aid bill, awarded Watson $1,030. App. at 77. The Board noted that "[the] claimant was without medical insurance at the time of the incident." *Id.*

### II.

New Jersey's Criminal Injuries Compensation Act ("the Compensation Act") authorizes the Board to award compensation to

---

[*] Honorable Norma L. Shapiro, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

the victims of certain crimes committed in New Jersey. State penalty assessments, general state funds, and federal grants from the Crime Victims' Fund, *see* 42 U.S.C.A. § 10601 (West 1987 Pamphlet), contribute to the pool out of which awards are made. The Compensation Act provides:

> The board may order the payment of compensation under this act for:
>
> a. expenses actually and reasonably incurred as a result of the personal injury or death of the victim,
>
> b. loss of earning power as a result of total or partial incapacity of such victim,
>
> c. pecuniary loss to the dependents of the deceased victim, and
>
> d. any other pecuniary loss resulting from the personal injury or death of the victim which the board determines to be reasonable.

N.J.S.A. 52:4B–12 (West 1986). In addition to other restrictions on awards, the act states:

> No award shall be made on an application unless the applicant has incurred a minimum out-of-pocket loss of $100.00 or has lost at least two continuous weeks' earnings or support; except that the requirement of a minimum out-of-pocket loss shall not apply to any applicant 60 years of age or older or any applicant who is disabled as defined pursuant to the federal Social Security Act.... Out-of-pocket loss shall mean unreimbursed and unreimbursable expenses or indebtedness reasonably incurred for medical care or other services necessary as a result of the injury upon which such application is based.

N.J.S.A. 52:4B–18 (West 1986). Section 52:4B–19 directs that:

> In determining the amount of compensation to be allowed by order, the board shall take into consideration amounts received or receivable from any other source or sources by the victim or his dependents as a result of the offense or occurrence giving rise to the application.

N.J.S.A. 52:4B–19 (West 1986).

The relevant federal law, Section 629, provides:

> (a)(1) Subject to the provisions of this section, in any case in which a veteran is furnished care or services under this chapter for a non-service-connected disability described in paragraph (2) of this subsection, the United States has the right to recover or collect the reasonable cost of such care or services (as determined by the Administrator) from a third party to the extent that the veteran (or the provider of the care or services) would be eligible to receive payment for such care or services from a third party if the care or services had not been furnished by a department or agency of the United States.
>
> (2) Paragraph (1) of this subsection applies to a non-service-connected disability—
>
> .    .    .    .    .
>
> (C) that is incurred as the result of a crime of personal violence that occurred in a State, or a political subdivision of a State, in which a person injured as the result of such a crime is entitled to receive health care and services at such State's or subdivision's expense for personal injuries suffered as a result of such crime; ....
>
> .    .    .    .    .
>
> (b)(1) As to the right provided in subsection (a) of this section, the United States shall be subrogated to any right or claim the veteran (or the veteran's personal representative, successor, dependents, or survivors) may have against a third party.
>
> .    .    .    .    .
>
> (f) No law of any state or of any political subdivision of a State, and no provision of any contract or other agreement, shall operate to prevent recovery or collection by the United States under this section....

38 U.S.C.A. § 629 (West Supp.1987).

On December 10, 1985, the United States commenced the present suit against the Board, seeking $18,348 ($8,123 + $10,225), or such other "relief as this court may deem equitable and just." App. at 5, 6.

The complaint asserts that "[p]ursuant to 38 U.S.C. 629(a) the United States is entitled to recover the cost of said hospitalization." *Id.*

Both parties moved for summary judgment. The district court decided this dispute in favor of the Board with the following analysis:

> Under 38 U.S.C. Section 629 the V.A.'s right to recover only arises in a case in which the injured person "is entitled" to receive health care and services at the State's expense. Whoever provides health care and services to the crime victim, with certain exceptions the victim is not "entitled" to be paid by New Jersey unless he has incurred an out-of-pocket loss of at least $100. Thus, for this reason the present case [is] not one to which the federal statute pertains.
>
> Furthermore, the Board is given the authority to deny benefits to those who otherwise qualify, for any reason or for no reason. Thus a claimant is not *"entitled"* to receive benefits until and unless the Board, exercising its discretion, decides to award benefits. As the defendants point out in their brief, the Board has a wide range of discretion in issuing awards as is evidenced by the precatory language of section 52:4B–12. . . . Of course the board may in its discretion elect not to award compensation. Since the veterans had no right to state funds in the absence of treatment by the V.A., the government cannot be heard to impose its demands on the Board. To hold otherwise would in essence allow the V.A. to be the entity which decides if veterans victimized by violent crimes in New Jersey are entitled to compensation.

App. at 123 (emphasis in original). The lower court found it unnecessary to address an additional argument of the Board that Section 629 as interpreted by the United States would violate the Tenth Amendment.[1]

### III.

Federal laws "enacted pursuant [to constitutional authorization] are supreme (Art. VI); and, in case of conflict, they control state enactments." *Panhandle Oil Co. v. Knox,* 277 U.S. 218, 221, 48 S.Ct. 451, 452, 72 L.Ed. 857 (1928). As the Supreme Court has said,

> When a federal statute unambiguously precludes certain types of state legislation, we need go no further than the statutory language to determine whether the state statute is preempted. *Aloha Airlines, Inc. v. Director of Taxation,* 464 U.S. 7, 12 [104 S.Ct. 291, 294, 78 L.Ed.2d 10] . . . (1983).

*Exxon Corp. v. Hunt,* 475 U.S. 355, 106 S.Ct. 1103, 1109, 89 L.Ed.2d 36 (1986). Subsection (f) of Section 629 unambiguously prohibits state legislation that "operate[s] to prevent recovery or collection by the United States under this section." Our task is to articulate how recovery by the United States is to occur "under this section," to explain how New Jersey's system for compensating crime victims operates, and then to determine the aspects of New Jersey's compensation scheme that are preempted by the federal legislation because they "operate to prevent recovery" under Section 629.

### A.

Under subsection (a)(1) of Section 629, the United States can recover the cost of caring for a veteran's non-service-connected disability "to the extent that the veteran (or the provider of the care or services) would be eligible to receive payment for such care . . . from a third party if the care . . . had not been furnished by a department or agency of the United States." Thus the federal law requires that a recovery claim by the United States be analyzed as if the veteran had received care in a hospital other than a VA hospital—in other words, as if the veteran had been treated by a provider that charged patients for

---

1. This case turns upon legal questions that are presented by the undisputed facts. Our review of the lower court's resolution of these legal questions is plenary. *See United States v.* *Adams,* 759 F.2d 1099, 1106 (3d Cir.1985) (review of interpretation and application of legal precepts is plenary), *cert. denied,* 474 U.S. 971, 106 S.Ct. 336, 88 L.Ed.2d 321 (1985).

care.[2] Subsection (a)(1) does not eliminate all prerequisites to recovery contained in state compensation statutes. It only requires that a state consider a veteran's claim as it would consider a claim by someone not treated in a VA hospital, but presenting the same injury, treatment, and surrounding circumstances, such as the existence or non-existence of insurance. Subsection (a)(2)(C) speaks in terms of recovery where a crime victim "is entitled to receive health care and services at such State's ... expense." This subsection, however, does not specify that entitlement must come about through a non-discretionary decisionmaking process. If, through its regular decisionmaking process,[3] the state determines that such a claimant is entitled to health care at the state's expense, then the United States can recover from the state, under subsection (a)(1), the reasonable cost of treating the crime victim.

Each party before us disagrees to some extent with this explanation of the recovery made possible by Section 629. The United States agrees that a veteran's claim is to be treated as if a private hospital provided the veteran's care, thereby allowing veterans' claims to be considered by state boards despite the requirement of out-of-pocket loss found in many state victims' compensation statutes. The United States, however, goes farther and seeks an immediate monetary judgment in its favor, even though New Jersey has not fully considered the present two claims through its

regular, discretionary decisionmaking process. In essence, the United States would have us read subsection (f) of Section 629 to eliminate, when the United States is the party seeking compensation, all conditions on recovery set by state victims' compensation laws. Such a reading ignores the phrase "under this section" in subsection (f). Subsection (f) is not divorced from the language of subsection (a) that allows recovery by the United States only when the veteran would be eligible to receive payment, but for the fact that the VA provided his or her medical care.

The Board, in contrast, interprets subsection (a)(1) to mandate consideration of claims made by the United States as if the veteran had received care *free of charge* from a non-federal provider. This reading renders Section 629 impotent in all states that require an out-of-pocket loss as a prerequisite to compensation. We reject the Board's interpretation because it is inconsistent with economic reality and with the statute's legislative history.

If, as Section 629 requires, a claim by the VA is to be analyzed as if "the care or services had not been furnished by a department or agency of the United States," one must assume that the veteran would have been billed for such care. One cannot realistically assume that the veteran could have gone out and found care given by a non-federal provider without incurring any liability for the cost of the treatment. Un-

---

**2.** We reject the contention that the phrase "if the care ... had not been furnished by a department or agency of the United States" directs consideration of a veteran's claim as if the veteran had received *free* care from a non-federal hospital. This interpretation of the phrase runs counter to both the realities of hospital care in this country and the legislative history of the statute. *See infra* at 462–63.

**3.** Of course, under subsection (a)(1) and subsection (f), the regular decisionmaking process cannot include a policy or rule that simply denies every claim submitted by the VA. New Jersey does not now argue that its discretionary decisionmaking system enables it to deny all claims presented by the VA, as the district court intimated when it stated that the Board could deny "benefits to those who otherwise qualify, for any reason." In denying the VA's claims, the Board did not state or imply that it was relying

on its discretionary authority. New Jersey relies on its out-of-pocket expense requirement, arguing that this dispute does not require us to consider the extent of the Board's discretion. *See* Appellee's Brief at 18–19 ("Since in this case the veterans neither paid nor became indebted for the medical care ... they did not meet the threshold requirement of an 'out-of-pocket loss,' .... Although the District Court noted that the Board had the discretion to deny payment even where the veterans were "eligible" for benefits, this case does not rise to that level."). We discuss the extent of the Board's discretion here and *infra* because the Board, when hereafter reconsidering these two claims, will not be able to deny them based on the VA's provision of free care and will have occasion to exercise its discretion to the extent such discretion is authorized under other sections of the statute and regulations.

less the veteran had insurance or other indemnification for treatment costs, the bill from the non-federal hospital would establish the out-of-pocket loss that compensation schemes such as New Jersey's treat as a prerequisite to compensation.

The legislative history establishes that Section 629 was designed to remedy problems of collection in states with out-of-pocket expense requirements. The House report, describing the bill finally enacted, states:

Twenty-six States have statutes on compensating victims of crimes of personal violence; however, the Veterans' Administration has difficulty in collecting in nine States because (1) Federal hospitals are excluded as "other source of recovery"; (2) claims go directly to the victim and claims are not assignable; or (3) veterans are not required to pay for medical care received.

The reported bill would strengthen and clarify the Veterans' Adiminstration's authority to recover the costs of veterans' nonservice-connected care from State workers' compensation, "no-fault" auto insurance and crimes of personal violence where a veteran would have entitlement to payment or reimbursement by a third party for appropriate medical care furnished in a non-federal hospital.

H.R.Rep. No. 97–79, 97th Cong., 1st Sess. 8, *reprinted in* 1981 U.S.Code Cong. & Ad.News 1685, 1693. By requiring a veteran's claim to be viewed as if the veteran had sought non-federal care, Congress mandated that the cost of the VA's treatment be viewed as the cost of a non-federal hospital, for which the veteran would have received a bill. If Congress had not wanted to escape out-of-pocket expense requirements and had merely wanted to escape explicit statutory provisions that barred recovery by the United States under state compensation laws, as New Jersey suggests, Congress could have written a much simpler Section 629. We decline to hold that Congress needlessly complicated the statute.

**B.**

We need not explain New Jersey's victim compensation system in detail. The system's two important characteristics, for our purpose, are clear and we shall limit our discussion to these two points.

First, the Board denied the VA's claims because the New Jersey compensation scheme remedies only pecuniary losses to the victim, or to members of the victim's family. In other words, with respect to recovery of medical treatment costs, the state has an out-of-pocket loss requirement. As the Board's claim denial letters to the VA indicate, this requirement is embodied in N.J.S.A. 52:4B–12 and N.J.S.A. 52:4B–19. The former section allows the Board to award compensation for "expenses actually and reasonably incurred as a result of personal injury." The latter section directs the Board to "take into consideration" any amounts received or receivable from any other source that may have offset the crime victim's pecuniary loss. These sections and their out-of-pocket loss requirement should be distinguished from N.J.S.A. 52:4B–18, which sets *minimum loss* prerequisites.

That the New Jersey scheme involves a general out-of-pocket loss requirement can most clearly be seen by looking at the regulations that govern the Board's decisionmaking. In the "Compensable damages" section, the regulations provide:

The Board may order the payment of compensation for expenses incurred as a result of the personal injury or death of the victim. These expenses *must represent a pecuniary loss to the claimant* as defined by N.J.S.A. 52:4B–1 et seq., and these rules

. . . .

N.J.Admin.Code 13:75–1.7(b) (emphasis added). The regulations go on to explain:

(a) In determining the amount of compensation to be awarded, the Board shall take into consideration amounts received or receivable from other "source or sources" by the victim or his dependents as a result of the offense or occurrence giving rise to the application.

(b) "Source or sources" means a source of benefits or advantages *which the claimant has received in lieu of economic loss or which is readily available to the claimant from,* but not limited to:

1. The offender;

2. *The government of the United States or any agency thereof,* the State or any of its political subdivisions, or an instrumentality of two or more states;

3. Social Security, Medicare, and Medicaid;

4. State required temporary non-occupational disability insurance;

5. Worker's Compensation;

6. Wage continuation programs of any employer;

7. Proceeds of a contract of insurance payable to the victim for loss which he sustained because of the criminally injurious conduct;

8. A contract providing prepaid hospital and other health care services or benefits for disability; or

9. All proceeds or recovery from any collateral action or claim based upon or arising out of the circumstances giving rise to claimant's petition before the Board.

N.J.Admin.Code 13:75–1.19 (emphasis added). Thus, as New Jersey now implements its statute, claims involving care by the VA without charge to the victim are excluded from coverage because such care constitutes an "other source" of compensation. With this other compensation available, the claimant has not suffered a pecuniary loss.

Second, the New Jersey system vests discretion in the Board. As the Supreme Court of New Jersey has pointed out,

We recognize that the Board is vested with a large measure of discretion in determining whether compensation shall be awarded to persons who meet the statutory criteria, as the statutory language is carefully couched in permissive terms. *See N.J.S.A.* 52:4B–10 to 12.

In addition, *N.J.S.A.* 52:4B–9 directs the Board to consider budgetary constraints in determining the amount of compensation payable under the Act.

*White v. Violent Crimes Compensation Board,* 76 N.J. 368, 388 A.2d 206, 209 n. 1 (1978). The district court correctly stated that a claimant is not entitled to receive benefits "until and unless the Board, exercising its discretion, decides to award benefits." Once the Board exercises its permissible discretion and decides in favor of a claimant, that claimant becomes entitled to collect the designated compensation. *See* N.J.S.A. 52:4B–19 (West 1986) ("order for compensation made by the board ... shall constitute authority for payment by the State Treasurer to the person or persons named therein of the amounts specified").

### C.

■ From the foregoing, we conclude that Section 629 has an important but limited impact on the operation of the Compensation Act. Under the federal statute, the Board must not consider care by the VA as "amounts received or receivable from any other source" under N.J.S.A. 52:4B–19, but must instead consider the cost of treatment by the VA as if the veteran had been billed for it. The cost of treatment will thus constitute "expenses actually and reasonably incurred" under N.J.S.A. 52:4B–12 unless some source other than the federal government, such as insurance, was obligated to pay for such treatment. In addition, the Board may not exercise its discretion to deny, automatically, all claims presented by the VA.

In this case, the Board denied both claims because it assumed that treatment by the VA resulted in a failure to establish out-of-pocket expenses and thus a failure to qualify for reimbursement under the Compensation Act. The Board's resolution of the claims ignored the preemption accomplished by Section 629. Therefore, these claims must be sent back to the Board for more detailed consideration in accordance with both state and federal law.

### IV.

■ The Tenth Amendment does not forbid the limited preemption accomplished by Section 629. The federal statute does not

require states to award compensation to crime victims. It requires only that once states set up victim compensation schemes, they must not deny benefits simply because the VA has already provided a benefit to the crime victim—namely, medical care without cost to the injured veteran. Section 629, in essence, prohibits states from considering VA medical care when those states seek to deny crime victims double recovery, from the victims' compensation fund and some second source, for their economic hardship. Especially when Congress has acted pursuant to its war powers, Art. I, § 8, cl. 12–14, the Tenth Amendment does not bar such a slight interference with a state compensation program.

Similar limited interactions between federal law and state compensation schemes have been upheld by other courts. In *Cantwell v. County of San Mateo*, 631 F.2d 631 (9th Cir.1980), *cert. denied*, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981), for example, a federal statute allowed Cantwell credit for active military service in figuring both Naval Reserve retirement pay and retirement pay from the County of San Mateo, while a state statute prohibited crediting the active duty in calculating county retirement benefits where the employee received a separate pension for service in the armed forces. The court ruled that the federal statute prevailed. It held:

> We find that congressional power to pass section 1336 exists under art. I, § 8, cls. 11, 12, & 13, and conclude that the constitutional grant of these powers is sufficient to sustain section 1336 against a tenth amendment challenge. We note parenthetically that California could have chosen *not to afford credit for any prior public service.* Having chosen to do so, however, it cannot do so in a manner which conflicts with section 1336.

631 F.2d at 636–37.

In *Texas Employers' Ins. Ass'n v. United States*, 569 F.2d 874 (5th Cir.1978), *cert. denied*, 439 U.S. 826, 99 S.Ct. 98, 58 L.Ed.2d 119 (1978), the court held that, under a VA regulation, the United States could recover from the Texas Employers' Insurance Association the cost of medical services provided by the VA to an injured veteran/employee covered by the Texas Workmen's Compensation Act, despite a state law that voided any employee's claim assigned to the VA. The court did not explicitly consider the Tenth Amendment, but reasoned:

> State law, however, does not control this case. The Veterans Administration promulgated § 17.48(d) under its statutory rulemaking power.... The regulation has the force of federal law. Under the Supremacy Clause of the Constitution, Art. VI, cl. 2, a state may not condition a workmen's compensation scheme in a manner which frustrates the purpose of a national statute. *Nash v. Florida Industrial Commission*, 389 U.S. 235 [88 S.Ct. 362, 19 L.Ed.2d 438] ... (1967) (denial of benefits for filing unfair labor practice charge conflicts with National Labor Relations Act).

> Application of the federal regulation here is but a minor trespass on the state scheme.

569 F.2d at 875.

Finally, in a *per curiam* opinion that does not explicitly consider the Tenth Amendment, the Supreme Court held that a federal statute overrode a state provision and prohibited an offset for a federal award under the Public Safety Officers' Death Benefits Act in calculating an Arkansas workmen's compensation award. *Rose v. Arkansas State Police*, —— U.S. ——, 107 S.Ct. 334, 93 L.Ed.2d 183 (1986). The Court wrote,

> The state court failed nevertheless to perceive a tension between the two statutes, concluding that the federal law did not alter the states' traditional right to set the level of workers' compensation benefits. This reasoning misses the point. The Benefits Act does not require a state to set a particular benefit level for its citizens; it simply prohibits a state from reducing the compensation it otherwise would provide to account for the federal payment.

— U.S. ——, 107 S.Ct. at 335. The circumstances of *Rose* closely parallel those here.

Perhaps the strongest support for the constitutionality of Section 629 is *United States v. Oregon*, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961). In that case the Supreme Court upheld, against a Tenth Amendment challenge, a federal statute that gave the property of a veteran who died intestate to the United States, rather than to the state as required by state law. The Court reasoned:

> We see no merit in the challenge to the constitutionality of § 1 as construed in this natural manner. Congress undoubtedly has the power—under its constitutional powers to raise armies and navies and to conduct wars—to pay pensions, and to build hospitals and homes for veterans. We think it plain that the same sources of power authorize Congress to require that the personal property left by its wards when they die in government facilities shall be devoted to the comfort and recreation of other ex-service people who must depend upon the Government for care. The fact that this law pertains to the devolution of property does not render it invalid. Although it is true that this is an area normally left to the States, it is not immune under the Tenth Amendment from laws passed by the Federal Government which are, as is the law here, necessary and proper to the exercise of a delegated power.

366 U.S. at 648–49, 81 S.Ct. at 1281. The present case is like *Oregon* because the federal government has determined that, in order for it to provide adequate benefits for veterans, it must receive monies that would otherwise constitute funds of a state. Here, instead of allowing the Board to avoid payment of compensation because of the out-of-pocket loss requirement, the federal statute requires that compensation be made on an equal basis with claims that arise in non-federal hospitals.

## V.

Because we find that the lower court misinterpreted Section 629 and we find that Section 629, as properly interpreted, is constitutional, we will reverse the district court's judgment and remand to that court. It will enter a judgment declaring that the Board is obligated to pay the VA's Watson and Brewer claims within sixty days of the date of the judgment unless, and except to the extent that, the Board earlier denies those claims on grounds not preempted by Section 629.