UNITED STATES of America, Plaintiff,

v.

CAPITAL BLUE CROSS, Defendant.

Civ. A. No. 1:CV–91–0686.

United States District Court,
M.D. Pennsylvania.

June 5, 1992.

James J. West, U.S. Atty., Harrisburg, Pa., Roger D. Einerson, Nancy E. Friedman, U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, D.C., Kim D. Daniels, U.S. Attys. Office, Harrisburg, Pa., Stuart M. Gerson, U.S. Dept. of Justice, Civ. Div., Washington, D.C., Colette J. Winston, U.S. Dept. of Justice, Civil Div., Torts Branch, Washington, D.C., for plaintiff.

Elizabeth A. Dougherty, Mary Jane Forbes, McNees, Wallace & Nurick, Harrisburg, Pa., for defendant.

## MEMORANDUM

RAMBO, District Judge.

Before the court are the cross Motions for Summary Judgment filed by the plaintiff, the United States of America, and by the defendant, Capital Blue Cross ("CBC," "Blue Cross"). These motions, which address precisely the same issues, are ripe for disposition and will be disposed of simultaneously.

### Background

Both parties agree that there are no disputed material facts in the present case, and that summary judgment is the proper device for resolving this dispute.

The core of this matter involves Blue Cross' refusal to reimburse the federal government for the reasonable cost of health care furnished to veterans at the Department of Veterans Affairs' ("VA") hospital in Martinsburg, West Virginia.

The complaint names five veterans who received treatment at that facility for non-service related maladies. Each of these veterans is eligible to receive Medicare benefits, and each had purchased a Medicare supplemental policy from CBC which would cover certain medical expenses not encompassed by Medicare. These policies are generically known as "Medigap" policies; CBC's designation for them is "65 Special."

The VA tendered claims for reimbursement involving the five veterans to Blue Cross. Blue Cross demurred, stating that since the VA charges were not reimbursable by Medicare, Blue Cross' Medicare supplemental coverage was not implicated.

The United States subsequently brought this action, arguing that the 65 Special policies, either as drafted or as applied by CBC, discriminated against the United States government (as compared to private health care facilities) with regard to the payment of benefits. Plaintiff seeks a declaratory judgment stating that CBC's contracts and conduct discriminate against the United States in contravention of 38 U.S.C. § 1729 and that VA facilities should be treated as any private facility with regard to reimbursement under CBC's "65 Special" policies. Plaintiff also desires reimbursement for such costs attributed to the five veterans described in the complaint (and, the court may assume, additional qualified veterans which Plaintiff might find in the future).

As stated above, the parties have cross-filed for summary judgment. This is a case of first impression for this court, at least with regard to the applicability of § 1729 to a private Medicare supplemental insurance policy, and there are no published decisions the court could discern which were directly on point on this issue.[1]

*Discussion*

The standards for the award of summary judgment under Federal Rule of Civil Procedure 56 are well known. As the Third Circuit Court of Appeals recently capsulized:

> Summary judgment may be entered if "the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Equimark Comm. Finance Co. v. C.I.T. Financial Serv. Corp.*, 812 F.2d 141, 144 (3d Cir.1987). If evidence is "merely colorable" or "not significantly probative" summary judgment may be granted. *Anderson*, 106 S.Ct at 2511; *Equimark*, 812 F.2d at 144. Where the record, taken as a whole, could not "lead a rational trier of fact to find for the nonmoving party, summary judgment is proper." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

*Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987). Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the nonmoving party may not simply sit back and rest on the allegations in his complaint, but instead must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court will consider the parties' motions under these standards.

I. Section 1729 and the Abolition of Discriminatory Health Care Contracts

Title 38 U.S.C. § 1729(a) provides:

[I]n any case in which a veteran is furnished care or services under this chapter for a non-service-connected disability ... the United States has the right to recover or collect the reasonable cost of such care or services ... from a third party to the extent that the veteran (or the provider of the care or services) would be eligible to receive payment for such care or services from such third party if the care or services had not been furnished by a department or agency of the United States.

38 U.S.C. § 1729(a)(1).

The definitions section defines "health-plan contract" as "an insurance policy or contract, medical or hospital service agreement, membership or subscription contract, or similar arrangement, under which health services for individuals are provided or the expenses of such services are paid." 38 U.S.C. § 1729(i)(1)(A). The term does not include Medicare and Medicaid, and thus the government is excluded from recovering from those programs.

The scope of § 1729's power extends to private parties as well as state bodies. Subsection (f) of the statute declares that

---

1. Counsel for Plaintiff submitted, after the close of briefing, two unpublished decisions which were released in May by district courts in Maryland and Alabama. In both *United States v. Blue Cross and Blue Shield of Alabama*, 791 F.Supp. 288 (N.D.Ala.1992) and *United States v. Blue Cross and Blue Shield of Maryland, Inc.*, 790 F.Supp. 106 (D.Md.1992), the courts were faced with issues identical to those facing the court here, and both courts held that applying a "Medicare-eligible" exclusion to VA hospitals was a violation of 38 U.S.C. § 1729. This court had essentially completed its analysis by the time it received these cases, and thus will not consider them as authority within the text of this memorandum. However, the court does acknowledge them as an indication of the tack

no provision of any private contract or other agreement will be permitted to deny the United States recovery. The legislative history of the amendment which permitted the United States to take action to recover its expenses explains:

> The reported bill would strengthen and clarify the Veterans' Administration's authority to recover the costs of veterans' nonservice-connected care ... where a veteran would have entitlement to a payment or reimbursement by a third party for appropriate medical care furnished in a non-federal hospital.

H.R.Rep. No. 97–79, 97th Cong., 1st Sess., *reprinted in* 1981 U.S.C.C.A.N. 1685, 1693.

The United States argues that, as the "65 Special" contracts offered by CBC deny the VA the opportunity to collect reimbursement in the same manner as private hospitals, they are contracts which discriminate both on their face and in practice against the government in contravention of § 1729. Plaintiff proffers two principal cases in support of its argument, *United States v. New Jersey; Violent Crimes Compensation Board,* 831 F.2d 458 (3d Cir.1987) and *United States v. Maryland,* 914 F.2d 551 (4th Cir.1990).

In *United States v. New Jersey; Violent Crimes Compensation Board,* 831 F.2d 458 (3d Cir.1987), the United States had brought suit against New Jersey's Violent Crimes Compensation Board to reclaim costs expended in treating two military veterans who had been injured as victims of crime. The state commission was empowered to pay compensation for medical expenses, etc. to innocent victims of violent crimes, but refused to reimburse the VA because the veterans had themselves paid no funds to the VA in obtaining their care. Construing § 1729,[2] the Third Circuit held

that the United States was entitled to recover from the state board. The court stated:

> [Section 1729] requires that a recovery claim by the United States be analyzed as if the veteran had received care in a hospital other than a VA hospital—in other words, as if the veteran had been treated by a provider that charged patients for care....
>
> [O]ne must assume that the veteran would have been billed for such care. One cannot assume that the veteran could have gone out and found care given by a non-federal provider without incurring any liability for the cost of the treatment....

*Violent Crimes Bd.,* 831 F.2d at 461–62.

The case of *United States v. Maryland,* 914 F.2d 551 (4th Cir.1990) involved a like set of circumstances where Maryland's Criminal Injuries Compensation Act was interpreted by the state to deny reimbursement to the VA for treatment administered to two veterans who were injured in the course of crimes perpetrated against them. Reversing the judgment of the district court, the Fourth Circuit found that the Maryland statute's provision which permitted recovery only where the veteran suffered financial hardship operated to discriminate against the VA, as the VA in nearly every situation provides health care services free of charge. *Maryland,* 914 F.2d at 555.[3]

In Plaintiff's estimation, these cases are dispositive. The court must merely substitute Blue Cross for New Jersey or Maryland and conclude that this is a circumstance where veterans, if they had checked into a private hospital, the hospital would have recovered; Blue Cross' denial of cov-

other courts in the nation are taking with regard to this issue.

**2.** The statute was, until recently amended, codified at 38 U.S.C. § 629, and is referred to as such in both *Violent Crimes Board* and *Maryland,* as well as in the statutory history of the section.

**3.** Plaintiff also cites two district court cases which are generally in agreement with *Violent Crimes Board* and *Maryland* regarding the VA's ability to recover from state agencies. In *United*

*States v. Ohio,* 756 F.Supp. 340 (S.D.Ohio 1990), the court, following the Third and Fourth Circuits, held that "Contrary to the defendant's assertions, the present [crime victim's compensation] scheme places VA hospitals in a position which nearly guarantees they will never be eligible for reimbursement of costs." *Ohio,* 756 at 343. In *United States v. California,* No. CV 87–0036HLH, 1987 W.L. 61203 (C.D.Cal. June 2, 1987), the court held that the California victims' compensation statute discriminated against the VA in contravention of § 629.

erage here results in discrimination against the VA in contravention of § 1729. Blue Cross naturally disagrees, arguing that § 1729 does .not apply to the 65 Special policies because the language of the policies is restrictive and because of the policies' special nature as defined by the Social Security Act.

## II. § 1729 and Medicare Supplemental Policies

Blue Cross' return volley is in the form of five separate, but related, arguments as to why § 1729 does not or should not apply to the 65 Special policies: 1) The policies by their terms do not cover health care not eligible for Medicare reimbursement; 2) any exceptions to that rule do not constitute a waiver of the rule; 3) the Medicare-eligible rule is applied to both private and public hospitals, and is thus not discriminatory; 4) Section 1729 does not apply to Medicare supplemental policies by its own definitions; 5) the court should adopt a Department of Defense interpretation of a similar statute which held that the statute did not apply to Medicare supplemental policies. The court will discuss each of these contentions in turn.

### A. Are Defendant's "65 Special" Policies Violative of § 1729?

■ Defendant's first three arguments as they appear in its Brief in Support/Op-

position may be addressed together, as they are closely related.

Defendant's initial argument asserts that, as coverage under the 65 Special policies is triggered only when the veteran is treated at a facility qualified to receive Medicare reimbursement, the policies are simply not implicated when the veteran receives care at a VA hospital.

CBC first notes that § 1729 only entitles the United States to be reimbursed for the costs of services to the extent that the veteran himself is eligible for payment. The 65 Specials, argues CBC, do not entitle the veteran to coverage where he is not first paid by Medicare. The nature of Medigap policies such as the 65 Specials is defined by statute as providing coverage only when Medicare fails to pay for certain expenses or treatments. *See* 42 U.S.C. § 1395ss(g)(1).[4] The court is reasonably satisfied that the policies, by their language, cover only disabilities which were not covered by Medicare.[5] Article III, the "Exclusions" section of the 65 Special policies, states that coverage is not provided for "[a]ny treatment, service or supply which would not or does not qualify for benefits under Medicare."[6] Accordingly, without so finding as a matter of law, the court will proceed in this Memorandum under the assumption that the 65 Special policies are at least conditioned on the Medicare eligibility of the treating facility (as

**4.** This section is part of what is called the Baucus Amendment, which provides that:

A Medicare supplemental policy is a health insurance policy or other health benefit plan offered by a private entity to individuals who are entitled to have payment under [Medicare], which provides reimbursement for expenses incurred for services and items which are not reimbursable by reason of the applicability of deductibles, coinsurance amounts, or other limitations imposed pursuant to [Medicare]. . . .

The policies at issue here were authored with the approval of the Pennsylvania Insurance Department and in accordance with the statutes and regulations governing the department. *See* 40 Pa.Cons.Stat.Ann. §§ 3101–3111; 31 Pa.Code §§ 89.751–89.769.

**5.** Defendant's second argument involves a discussion of certain exceptions which CBC makes to its "Medicare-eligible"-only interpretation of

the 65 Special policies, particularly with regard to VA deductibles and "carve out" policies. In its Reply Brief, Plaintiff seems to argue that these exceptions constitute a waiver of the argument that under the contract the veteran must first receive Medicare-eligible treatment prior to reimbursement by the policy. The court sees no relevance to this discussion. CBC is entitled to contract to cover or not cover whatever types of costs it wishes within the boundaries of the law. That CBC opts to make some exceptions to its general policy does not, in this court's view, rise to the level of a waiver of that general policy and, moreover, it has no bearing on the issue at hand—whether the general policy violates the no-discrimination clause of § 1729.

**6.** Evidently, several different versions of the 65 Special policies are implicated with regard to the veterans named in the Complaint. The exclusion discussed here is the same with regard to all the relevant policies, however.

opposed to actual payment to the facility or the veteran by Medicare).

Medicare is prohibited by statute from paying benefits to the VA or to those veterans who receive care free of charge at a VA facility. 38 U.S.C. § 1729(a)(2)(d) and (i)(1)(B)(i); 42 U.S.C. §§ 1395f(c) and 1395n(d). Plaintiff posits that these provisions were enacted to prevent the pointless procedure of having one agency of the federal government fork over funds to another agency of the federal government. While the court has seen no direct authority for this proposition, it does make logical sense, and certainly appears to be as good an explanation as any for the existence of this rule.

Defendant's third argument posits that the CBC Medigap policies are not violative of § 1729 because they do not discriminate between private hospitals and VA hospitals. The criterion in the contract is that the services provided be eligible for Medicare reimbursement, and this criterion is applied in an egalitarian manner to both private and government facilities.

As the court sees it, both Defendant's first and third arguments may not stand under the interpretations presented by the Third and Fourth Circuits in *United States v. New Jersey; Violent Crimes Compensation Board,* 831 F.2d 458 (3d Cir.1987) and *United States v. Maryland,* 914 F.2d 551 (4th Cir.1990).

As stated earlier, subsection (f) of 38 U.S.C. § 1729 states that no "provision of any contract or other agreement" may "operate to prevent" the United States from recovering from responsible third parties for care rendered to veterans. According to the Fourth Circuit, the choice of the word "operate" indicates that Congress intended to abolish not only discrimination which appears on the face of a contract or statute, but also "discrimination which takes place in practice." *Maryland,* 914 F.2d at 554.

In both *Maryland* and *Violent Crimes Board,* the defendant state agencies tendered essentially the same two arguments as CBC's numbers one and three here, and those courts rejected both of them. In *Violent Crimes Board,* the defendant board contended that the predecessor to § 1729 required that the United States' claims be interpreted as if the veteran had received the care free of charge from a non-federal provider. The Third Circuit rejected this interpretation:

> This reading renders [§ 1729] impotent in all states that require an out-of-pocket loss as a prerequisite to compensation. We reject the Board's interpretation because it is inconsistent with economic reality and with the statute's legislative history.... One cannot realistically assume that the veteran could have gone out and found care given by a non-federal provider without incurring any liability for the cost of the treatment.

*Violent Crimes Bd.,* 831 F.2d at 462–63. Thus, *Violent Crimes Board* counsels that a court should not merely look to the technical wording of the statute or agreement, it must determine what is the practical effect of the exclusionary language.

The Fourth Circuit in *Maryland* came to the same conclusion. The *Maryland* court reasoned:

> While it is true on its face the Criminal Injuries Compensation Act does not discriminate against the federal government, in practice the Board's construction of the Act would prevent recovery by VA hospitals in virtually all cases.... Since the veterans themselves are not financially indisposed by the free VA medical care, in the overwhelming majority of cases the Maryland Act's serious financial hardship requirement precludes VA hospitals from recovery.

*Maryland,* 914 F.2d at 554.

Similarly, the court here concludes that the 65 Special contracts operate to prevent recovery by the VA where private facilities may recover. Plaintiff has attached to its brief a declaration by the Director of the Division of Hospitals of the Pennsylvania Department of Health which states that in Pennsylvania there exists no private, general acute care hospital which does not participate in the Medicare program. The same is true in at least some other states, *see United States v. Blue Cross & Blue*

*Shield of Ala.*, 791 F.Supp. at 289, n. 4 (N.D.Ala.1992) (every private hospital in Alabama is eligible for reimbursement by Medicare), and the court believes it is reasonable to assume that nationwide there are few private hospital facilities which do not participate in Medicare (and thus would not qualify for reimbursement under the 65 Special Policies). Certainly Defendant has not identified a single such facility. The VA hospitals, as stated earlier, are statutorily prohibited from recovering costs from Medicare.

It is the court's belief that the "Medicare eligible"-only condition precedent in the 65 Special policies operates to exclude recovery by the federal government where a private provider would be able to recover. Accordingly, Defendant's first argument, that § 1729 is not implicated because of the policies' "Medicare supplemental" nature, is not correct because the effect of the policies is to discriminate against the VA. Defendant's second argument, that the policies treat private and VA hospitals equally is also not accurate under the interpretations of the statute in *Maryland* and *Violent Crimes Board:* In practice, the policies bar recovery in virtually every instance to the VA facilities; it permits recovery in the same situation if those patients were treated at private facilities.

### B. Are the "65 Special" Policies Health–Plan Contracts?

Blue Cross also argues that the 65 Special policies and are not "health plan contracts" as defined under § 1729, and therefore are outside the scope of the statute's power. As noted earlier in this Memorandum, § 1729 does not apply to Medicare and Medicaid-subsidized treatment, i.e., "insurance program[s] described in section 1811 of the Social Security Act (42 U.S.C. § 1395c) or established by section 1831 of such Act (42 U.S.C. 1395j)...." The 65 Special policies were, of course, introduced under the Baucus Amendment to the Social Security Act, 42 U.S.C. § 1395ss, and various Pennsylvania statutes and regulations. According to CBC's reasoning, the supplemental policies are therefore part of Medicare and Medicaid and outside the provisions of § 1729. To bolster this contention, Defendant argues that the government's interpretation of § 1729—that the statute applies to Medicare supplemental policies— would mandate the implicit repeal of a portion of the Baucus Amendment, as a "supplemental" health care policy would be turned into a "primary" policy. Citing *Posadas v. National City Bank,* 296 U.S. 497, 56 S.Ct. 349, 80 L.Ed. 351 (1936), Defendant states that such implicit repeals of existing statutes are traditionally disfavored unless the newer act expressly contradicts the older law or unless construing repeal is the only method of giving meaning to the second statute. *See Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 153, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976). This is particularly so where the newer statute is general in its terms, while the original law addresses more specific matters.

Defendant argues that there is no indication that Congress intended to repeal § 1395ss, and, furthermore, that there is no need to do so, as the two are by no means irreconcilable if one interprets the Medicare exclusion as applying to the supplemental policies outlined in the Baucus Amendment.

However, the court does not read § 1729, if permitted to apply to Medigap policies, as necessitating the implicit repeal of the Baucus Amendment. First, the definition of "health-plan contract" in § 1729 is quite broad, encompassing "an insurance policy or contract ... under which ... the expenses of [health] services are paid." 38 U.S.C. § 1729(i)(1)(A). The exclusion cited by Defendant applying to Medicaid and Medicare, as noted above, appears to have been inserted to prevent the waste and inefficiency of intragovernmental transfers of payments. Certainly such reasoning does not apply to a private insurer such as CBC, nor would there be any reason to extend the umbrella of this exception to a private company.

■ This conclusion is bolstered by reference to the legislative history of § 1729.

The House Report issued in connection with the section declares:

> [R]ecovery may not be sought for care where the source of reimbursement is Medicare or Medicaid.... In the event the veteran has both Medicaid and private health insurance, the private health insurance would be payable in accordance with its terms, but no reimbursement from Medicare or Medicaid would be obtained by the VA or the private insurance company.

H.R.Rep. No. 300, 99th Cong., 1st Sess., at 790 (1985) U.S.Code Cong. & Admin.News pp. 42, 1265. The court reads this language as underscoring that the coverage of the statute is broad and evincing an intent on the part of Congress to 1) exempt only Medicare and Medicaid and 2) permit the government to pursue other insurers for payment. CBC argues that this interpretation is incorrect, noting that the language "payable in its own terms" indicates that private insurers may set the terms of coverage with their insureds—here, the terms of the 65 Specials exclude payment where the veteran is not entitled to receive Medicare benefits first. The court agrees with this opinion to a point, but notes that the language of the House Report must also be read as implicitly stating "as permitted by law." Certainly blatantly discriminatory terms in private policies would not be honored. Here, the court believes that the 65 Special policies are violative of the anti-discrimination guideline set in § 1729, and that the "terms" of those policies, to the extent that they conflict with § 1729, are a nullity.

The court, moreover, believes that the United States' reading of § 1727 is entirely compatible with the Baucus Amendment. Blue Cross will not be placed in the position of primary insurer; instead Blue Cross will only be liable for payment to the extent it would be liable to a private facility, that is, for the portions of care which Medicare would not cover. This interpretation then merely substitutes the government payment for the health care through Medicare for the government payment through the VA, with Blue Cross picking up the remainder as defined in the Medigap policy.

CBC also argues that the legislative history of § 1729 indicates that Medicare supplemental policies were not intended to be within the purview of the section. In 1990, Senator Cranston, Chairman of the Veterans' Affairs Committee, introduced in Committee a bill which would have specifically included Medicare supplemental policies in the definition of "health-plan contract." S.B. 2455. According to Defendant, this bill was never passed by the committee and therefore never voted on in the full Senate.

Defendant argues that the introduction of this amendment demonstrates that its subject matter—the inclusion of Medigap policies in the definitions of health-plan contract—was not a part of the original unamended law.

■ The court finds this bit of legislative history to be of little relevance. First, the bill would have amended a law which had been in place several years at that point. Certainly these facts would have more probative value were the provision one of several considered and discarded at the time of enactment, rather than one discussed long after the fact. *See Sutherland on Statutory Construction* § 48.18 (5th Ed.1992) ("[C]aution must be exercised in using the action of the legislature on proposed amendments as an interpretive aid. Action on a proposed amendment is not a significant aid to interpretation of an act that was passed years before."). Moreover, one could draw the equally valid inference that the inclusion of Medigap policies was originally intended by Congress to be within the broad definition of health-plan contract, but that controversy had arisen because it was not specifically included. Therefore, the amendment would be added to crystallize this preexisting intent. Given this, the court cannot accord much weight to the fact of the proposed Cranston amendment. *See Tahoe Regional Planning Agency v. McKay*, 769 F.2d 534, 538 (9th Cir.1985) ("[C]are must be taken to distinguish unsuccessful attempts to amend proposed legislation during the process of enactment from unsuccessful attempts to amend a

measure passed by a previous legislative session.").

### C. Section 1095 and the Department of Defense

█ CBC notes that a statute similar to § 1729, 10 U.S.C. § 1095,[7] which permits the Department of Defense ("DOD") to recover for the medical costs of military personnel, was interpreted by the DOD as not applying to Medicare supplemental insurance policies. 55 Fed.Reg. 21742, 21746 (1990). Soon after the publication of this interpretation, Congress amended § 1095 to specifically include Medigap policies. 10 U.S.C. § 1095(h)(2). CBC argues that this court should accept the DOD's interpretation of the very similar language of § 1095 as applying to § 1729. However, the court finds it more telling that Congress, after the announcement of the DOD position, amended the definition of "health-plan contract" in the statute to include Medicare supplemental policies. As the court sees it, Congress was, through this action, in all likelihood clarifying its preexisting intent that § 1095's definition of "health-plan contract" did include Medigap policies, an intent that the DOD's announced interpretation thwarted.

Importantly, Defendant's argument that if Medicare supplemental policies were included within the purview of § 1729 it would implicitly repeal a portion of the Baucus Amendment is somewhat weakened by Congress' revision of § 1095. It would seem that that argument would apply equally to § 1095 and § 1729. When faced with including or excluding Medigap policies, Congress included them despite any effect on the Baucus Amendment, leading to the inference that Congress was not overly concerned with any implicit repeal of that law.

Accordingly, the court is satisfied that Congress' amendment of 10 U.S.C. § 1095 supports, not detracts, from Plaintiff's po-

sition that § 38 U.S.C. § 1729 is applicable to Medicare supplemental policies.

### III. Conclusion

It is the conclusion of the court that there is no principled way to distinguish the Medicare supplemental policies at issue here from the state victims compensation programs at issue in *United States v. New Jersey; Violent Crimes Compensation Board*, 831 F.2d 458 (3d Cir.1987) and *United States v. Maryland*, 914 F.2d 551 (4th Cir.1990). The exclusion in the 65 Special policies limiting payment to care received at "Medicare-eligible" facilities operates in practice to deny the VA payment where, in the same situation, a private hospital would recover in nearly every case. That is what happened with the five veterans discussed in the Complaint and in the briefing on this motion. Moreover, by the language and legislative history of the section, Congress clearly intended 38 U.S.C. § 1729 to apply to private insurers such as CBC and to Medigap policies such as the 65 Specials. Accordingly, the court will declare CBC's "Medicare-eligible" first requirement in the 65 Special policies violative of § 1729 as applied to VA medical care facilities. This will, of course, empower the VA to recover only so much of their costs as a private provider would be due.

### IV. Remedy

There are two disputes evident in the briefs as to what is the proper remedy here should § 1729 be declared to apply to the 65 Special insurance policies.

### A. Reimbursement

Plaintiff is requesting reimbursement for recoverable costs expended on the five veterans named in the complaint (and, the court may assume, would be seeking further reimbursement in the future with regard to other similarly situated veterans). Defendant posits that ordering reimbursement would be inequitable, and points out

---

7. Section 1095 reads:
[T]he United States shall have the right to collect from a third-party payer the reasonable costs of health care services incurred by

the United States on behalf of such person through a facility of the uniformed services to the extent that the person would be eligible to receive reimbursement.

that in amending § 1095, Congress did not make the power of the act retroactive against existing Medicare supplemental policies. This, according to CBC, was done in order to permit insurers to review their premium structure and adjust the required premiums to accommodate the additional coverage. Last, CBC asserts that ordering reimbursement would alter the terms of a private contract, a result courts should endeavor to avoid.

The court notes, however, that numerous courts in similar situations have permitted reimbursement. The Third Circuit in *Violent Crimes Board* ordered that the New Jersey compensation board reimburse the VA for the treatment given to the two crime victims involved in that case. 831 F.2d at 466. Similarly, the court in *Maryland* found reimbursement to be an appropriate remedy. 914 F.2d at 555. *See also United States v. Ohio*, 756 F.Supp. 340 (S.D.Ohio 1990); *United States v. California*, No. CV 87–0036HLH, 1987 W.L. 61203 (C.D.Cal. June 2, 1987). The district court in *United States v. Blue Cross & Blue Shield of Ala.*, 791 F.Supp. at 290 (N.D.Ala.1992) ordered reimbursement of the VA in circumstances very similar to this one, albeit without much discussion as to the appropriateness of the remedy. This court sees no reason to stray from the path set by these courts.

## B. Implementation Problems

Another problem which Defendant has identified involves the implementation and administration of prospective reimbursements to the VA under the existing Medicare statutory framework. Defendant has attached to its Reply Brief a report sent to the Department of Defense by the Department of Health and Human Services, Health Care Financing Administration outlining certain discrepancies which it recommended the DOD attempt to avoid in implementing the amendment to § 1095. One

discrepancy was that supplemental insurers could be forced to pay double deductibles even though the insured suffered from only one "spell of illness." Under § 1861 of the Medicare act, a spell of illness is a period of 60 days between release from the Medicare participating facility to the time where one is readmitted to such a facility. The Medicare statute does not require the patient to pay a deductible for the second visit during this period. However, if the covered individual were to first seek treatment at the facility not covered by Medicare, i.e. the VA hospital or a Military facility, and then, after release, seek treatment for the same illness within the 60 day period at a Medicare participating private facility, the supplemental insurer would be required under § 1095 to pay the government facility's deductible, and then disburse a second deductible at the second facility. If state officials did not enforce the Medicare regulation and permitted the insurer to forego paying the second deductible, then the insured would be forced to pay the second deductible. HCFA, *DOD Regulation—Collection from Third Party Payers Health Care Financing Administration Comments* at 1–2 (Feb. 1992).[8]

The court, however, notes that in some 19 states and the District of Columbia Blue Cross/Blue Shield is already reimbursing the VA as a matter of course under Medigap policies. Such problems are dealt with in those cases and the court is confident that CBC can deal with them here. In addition, even the HCFA Comments note that the double payment problem is likely to be a rare one, as military-related patients who would go to a military health care facility in the first instance would in all likelihood return to that facility absent an emergency situation. HCFA Comments at 2–3. Also, as recognized by the *United States v. Blue Cross and Blue Shield of Maryland, Inc.*, 790 F.Supp. 106, 107–108 (D.Md.1992) case, Medicare approved

---

8. Interestingly, the HCFA in this document stated that "the Department of Veterans Affairs (DVA) ... has similar [to the DOD under the amended § 1095], although less explicit, statutory authority to collect against Medigap insurers." HCFA Comments at 2. The court reads

this statement as a recognition by the HCFA that § 1729 provides authority for reimbursement to the VA which essentially parallels that of the DOD under the reconfigured § 1095, an interpretation which undercuts Defendant's assertions on the merits of Plaintiff's claim.

charges are defined by statute, so that disputes over charges should be relatively few.

The court does not see the implementation problems identified by Defendant as insurmountable, certainly not to the point of getting this court into the business of regulating insurers and VA hospitals. It is the court's position that such problems may be overcome by negotiation and consultation as to how a system for the calculation of and disbursement of reimbursements to the VA from the Medigap policies may best be put in place.

An appropriate order will follow.

#### ORDER

In accordance with the accompanying memorandum, IT IS HEREBY ORDERED THAT:

1) Plaintiff's Motion for Summary Judgment is granted;

2) It is declared that under the power of 38 U.S.C. § 1729, the United States has the right to recover the reasonable costs of care or services furnished to certain veterans as set forth in § 1729 who would be eligible to receive payment from defendant if the care or services had not been furnished by a department or agency of the United States;

3) Defendant shall reimburse the Department of Veterans Affairs for the reasonable costs of care or services for the veterans or private hospitals to the extent the veterans would be eligible to receive payment if the care or services had not been furnished by a department or agency of the United States;

4) Defendant shall pay the United States an amount equal to the portion of the cost of care that Medicare would not have paid with regard to the reasonable cost of care and services furnished to the five veterans named in the Complaint;

5) Defendant shall reimburse the United States for all claims that are either pending or were denied on the grounds that the expenses were not "Medicare-eligible;"

6) Each side shall bear their own costs; and

7) The Clerk of Court shall close the file.