**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**BLUE CROSS & BLUE SHIELD OF
MARYLAND, INCORPORATED,
Defendant–Appellant.**

**Blue Cross and Blue Shield Association,
Amicus Curiae.**

**No. 92–1781.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 1, 1993.

Decided March 22, 1993.

---

Philip Vito Tamburello, Office of Corporate Counsel, Blue Cross & Blue Shield of Maryland, Inc., Owings Mills, MD, argued (Lawrence A. Richardson, Jr., Office of Corporate Counsel, Blue Cross & Blue Shield of Maryland, Inc., on the brief), for defendant-appellant.

Colette Jabes Winston, Civil Div., U.S. Dept. of Justice, Washington, DC, argued (Stuart M. Gerson, Asst. Atty. Gen., Jeffrey Axelrad, Roger D. Einerson, Civil Div., U.S. Dept. of Justice, Richard D. Bennett, U.S. Atty., Baltimore, MD, on the brief), for plaintiff-appellee.

Roger G. Wilson, Joel E. Gimpel, Blue Cross & Blue Shield Ass'n, Chicago, IL, Meryl D. Burgin, Owings Mills, MD, for amicus curiae.

Before ERVIN, Chief Judge, and WIDENER and WILKINSON, Circuit Judges.

## OPINION

ERVIN, Chief Judge:

This case presents the question whether an insurance company offering gap-filling coverage to Medicare patients may construe its coverage to exclude reimbursement to VA hospitals because the hospitals do not derive benefits first from the Medicare system. We hold that it may not, and affirm the district court.

### I

The facts of this case are straightforward and undisputed. Eleven veterans, who held Medicare supplemental ("medi-

gap") policies issued in Maryland [1] by Blue Cross & Blue Shield of Maryland, Inc. ("BCBS"), received medical care and treatment at the Department of Veterans Affairs Medical Center in Martinsburg, West Virginia for non-service-connected disabilities. The veterans all were over the age of sixty-five and were eligible to receive Social Security retirement benefits, thereby making them eligible to receive Medicare benefits. *See* 42 U.S.C. § 1395c. Because the veterans were treated at a Veterans' Administration ("VA") hospital however, they were not required to pay for the services they received and did not claim Medicare benefits. When the United States filed claims with BCBS for reimbursement on behalf of the veteran patients, BCBS responded that its medigap policies covered only those medical expenses incurred in a manner that would trigger Medicare coverage as well.

The United States brought this action in the district court for the District of Maryland to collect benefits under the BCBS medigap policies, asserting that a non-discrimination section of the Veterans' Benefits Act, 38 U.S.C. § 1729, prohibited BCBS's nonpayment. Because BCBS construed the Medicare system as the vehicle barring the government's recovery of benefits, it contended that its medigap policies do not involve prohibited discrimination. The district court disagreed, granting summary judgment for the United States. 790 F.Supp. 106. BCBS appealed.

## II

BCBS's position in this case stems from its construction of the interaction between three distinct pieces of health care legislation—the Medicare system, 42 U.S.C. §§ 1395–1395ccc; the Baucus Amendment, which deals specifically with medigap policies, 42 U.S.C. § 1395ss; and the reimbursement and non-discrimination provision of the Veterans' Benefits Act, 38 U.S.C. § 1729. BCBS contends that Congress en-

dorsed medigap policies as a part of the Medicare system, and that, when Congress excluded Medicare from section 1729's application, it similarly excluded medigap policies. A proper analysis of the validity of this contention rests necessarily upon a brief overview of the structure of the implicated statutes.

The Medicare system, although notably complex, may be summarized for the purpose of this case as a program triggered by a determination of participant entitlement. A patient's entitlement to benefits rests on the outcome of a two-part analysis. First, is the patient eligible for Medicare payments? The patient must be over the age of sixty-five and eligible for Social Security retirement benefits to claim benefits under Medicare. *See* 42 U.S.C. § 1395c. Second, are the claimed benefits covered by Medicare? The benefits claimed must be both recognized by Medicare as a covered expense and considered a reasonable amount for the service provided. *See* 42 C.F.R. parts 409 & 410.

The Medicare system identifies situations in which claims will not be paid despite the patient's eligibility and the benefits' coverage. Three such situations are relevant to this case: (1) when the health care provider is a federal department or agency, 42 U.S.C. §§ 1395f(c), 1395n(d); (2) when services are provided under circumstances in which the patient is under no obligation to pay, *id.* §§ 1395y(a)(2) & (3); and (3) when the health care provider is not a certified participant in the Medicare program, *id.* § 1395f(a). The first two exclusions operate to prevent VA hospitals from collecting Medicare reimbursements. The third exclusion prevents reimbursement for services provided by uncertified institutions, including both private hospitals which might choose not to certify themselves for Medicare payments and VA or other government-sponsored hospitals which by definition cannot seek Medicare certification.

---

1. No organization may engage in an insurance business or merchandize insurance products in Maryland without complying with applicable provisions of Article 48A, Insurance Code, of the Annotated Code of Maryland, including the Medicare Supplemental Act. Md.Ann.Code art. 48A, § 1 (1991).

The Medicare system was not designed to pay all incurred medical expenses; therefore, the system leaves the patient with the responsibility of paying various deductibles and coinsurance amounts.[2] In response to these gaps in coverage, private insurers began offering medigap policies. In 1980 Congress enacted the Baucus Amendment, Pub.L. No. 96–265, § 507, 94 Stat. 441, 476 (codified as amended at 42 U.S.C. § 1395ss), to the Social Security Act, to sanction and officially define medigap policies. The statute describes a medigap policy as

a health insurance policy or other health benefit plan offered by a private entity to individuals who are entitled to have payment made under this subchapter [42 U.S.C. §§ 1395–1395ccc, Health Insurance for the Aged and Disabled], which provides reimbursement for expenses incurred for services and items for which payment may be made under this subchapter but which are not reimbursable by reason of the applicability of deductibles, coinsurance amounts, or other limitations imposed pursuant to this subchapter; but does not include any such policy or plan of one or more employers or labor organizations....

42 U.S.C. § 1395ss(g)(1).

The Baucus Amendment prevents the issuance of medigap policies in a state unless the state legislature requires the application and enforcement of standards set forth in the National Association of Insurance Commissioners Model Regulation to Implement the Individual Accident and Sickness Insurance Minimum Standards Act ("NAIC standards"). *Id.* §§ 1395ss(a)(2), (g)(2). Although the NAIC standards suggest that a medigap policy, in delineating coverage, may define the term "hospital" to exclude "any military or veterans hospital *or soldiers home or any* hospital contracted for or operated by any national government or agency thereof for

the treatment of members or ex-members of the armed forces," the Maryland legislature opted not to include that definition in its codification of the NAIC standards. Md.Ann.Code art. 48A, §§ 468B–468GH (Supp.1992). Therefore, the language permitting exclusion of veterans hospitals from medigap coverage is not available to medigap insurers organized and operating under Maryland law. *See id.* § 1 (1991).

BCBS offers a series of medigap policies in Maryland designed to help pay those medical expenses not paid by Medicare. In some cases the BCBS medigap policies cover items excluded from an area generally covered by Medicare such as required deductibles and copayments, while in other cases the policies cover items excluded entirely from Medicare coverage such as expenses for prescription drugs or expenses incurred in a hospital outside the United States. In all instances, the policies indicate that payments will not be made for the following:

1. Expenses for services and items not eligible for coverage under Medicare, except as explicitly specified in this Contract;

. . . .

4. Expenses for services which are provided for or received in any Federal hospital or facility, or through any Federal, State or local governmental agency or department....

The creation of new insurance products, such as BCBS's medigap policies, to cover mounting health care costs alerted Congress to the possibility that private insurers might be enjoying a windfall from the government's provision of free health care in certain circumstances. Congress recognized that the government's growing expenditures for legislatively mandated health care such as VA hospitals could be defrayed by drawing on these outside sources for reimbursement.[3] In 1986 Con-

**2.** Medicare does not cover fully certain health care services; the lack of coverage occurs despite the patient's compliance with applicable deductibles. In such cases, the patient must pay a portion of the expenses incurred or a coinsurance amount. *See, e.g.,* 42 U.S.C. § 1395e(a)(3).

**3.** In 1980 Congress rejected a bill that would have enabled the VA to recover the costs of non-service-connected care provided to veterans from veterans' health insurance carriers. Instead of mandating direct reimbursement, Congress authorized VA hospitals to investigate, on

gress enacted legislation allowing recovery from private insurers and reinforcing its position that insurers or other third-party reimbursers not be allowed to discriminate against VA hospitals. Comprehensive Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99–272, § 19013, 100 Stat. 82, 382–85 (codified as amended at 38 U.S.C. § 1729). The legislative history documenting passage of the private insurance reimbursement provision details the intended scope of available reimbursements as follows:

> [N]o third party payer would be required to reimburse the VA for a health care service that is not covered under the terms and conditions of its contracts, policies or other agreements with veterans. Of course, third party payers would no longer be able to refuse to reimburse based on a general exclusion of care provided by the VA.
>
> . . . .
>
> The bill would effectively nullify any contract provision agreed to after the date of enactment of this measure which seeks to bar the United States from recovery in connection with care furnished in the circumstances described in the bill.

H.R.Rep. No. 300, 99th Cong., 2d Sess. 789 (1986), *reprinted in* 1986 U.S.C.C.A.N. 756, 1264.

The reimbursement and non-discrimination legislation, now codified at 38 U.S.C. § 1729,[4] provides that

> in any case in which a veteran is furnished care or services under this chapter for a non-service-connected disability . . ., the United States has the right to recover or collect the reasonable cost of such care or services (as determined by the Secretary [of Veterans Affairs]) from a third party to the extent that the veteran (or the provider of the care or services) would be eligible to receive payment for such care or services from such third party if care or services had not been furnished by a department or agency of the United States.

38 U.S.C. § 1729(a)(1). This section permits the United States to seek reimbursement under a veteran's "health-plan contract," or "insurance policy or contract, medical or hospital service agreement, membership or subscription contract, or similar arrangement, under which health services for individuals are provided or the expenses of such services are paid," excluding the Medicare and Medicaid programs. *Id.* § 1729(i)(1). In addition, "[n]o law of any State or of any political subdivision of a State, and no provision of any contract or other agreement, shall operate to prevent recovery or collection by the United States under this section." *Id.* § 1729(f).

### III

■ Against the backdrop of these statutory schemes, BCBS defends its denial of veterans' coverage under its medigap policies with alternative theories. First, BCBS asserts that the medigap policies fully com-

a case-by-case basis, veterans' ability to defray necessary medical expenses through outside sources. *See* Veterans' Administration Health-Care Amendments of 1980, § 401, 94 Stat. 1030, 1051 (repealed). This modification was

> designed to allow the Administrator to determine whether certain veterans are able, based on outside income, or adequate private insurance coverage, or both, to receive treatment for non-service-connected disabilities outside the Veterans' Administration.

H.R.Rep. No. 958, 96th Cong., 2d Sess. 16 (1980). By not implementing the legislation as passed, the VA failed to carry out the intent of Congress. H.R.Rep. No. 300, 99th Cong., 2d Sess. 786–87 (1986), *reprinted in* 1986 U.S.C.C.A.N. 42, 756, 1261–62.

In 1981 Congress enacted a system of direct recovery against workers' compensation plans,

state automobile "no-fault" provisions, and state "victims of crimes" acts. Veterans' Health Care, Training, and Small Business Loan Act of 1981, Pub.L. No. 97–72, § 106, 95 Stat. 1047, 1050–51 (codified as amended at 38 U.S.C. § 1729). Reimbursement from these various state funds proved successful; therefore, Congress revisited the issue of reimbursement from private insurers in 1986. H.R.Rep. No. 300, 99th Cong., 2d Sess. 786–87 (1986), *reprinted in* 1986 U.S.C.C.A.N. 756, 1261–62.

4. The section, previously codified as 38 U.S.C. § 629, was amended and renumbered in 1991. Department of Veterans Affairs Codification Act, Pub.L. No. 102–83, § 5(a), 105 Stat. 378, 406 (1991) (codified as amended at 38 U.S.C. § 1729).

ply with the non-discrimination provisions of 38 U.S.C. § 1729 because they implicate no state law or private contract term that precludes the extension of coverage to veterans treated in a VA hospital. Instead, BCBS insists that the United States itself creates the impediment to coverage by prohibiting Medicare reimbursements to VA hospitals. This prohibition, which allegedly acts to prevent the triggering of medigap policy coverage, stems from federal legislation, not a state statute or contract term. BCBS therefore claims that the implications of this provision are discrimination not prohibited by section 1729.

Second, BCBS asserts that the section 1729 reimbursement and non-discrimination provisions do not apply to medigap policies. BCBS supports this contention by arguing that the policies are part of the Medicare system and 38 U.S.C. § 1729 excludes the Medicare system from the sources available for governmental reimbursement. *See* 38 U.S.C. § 1729(i)(1)(B)(i). Namely, BCBS suggests that a medigap policy is not a health-plan contract. We find both of BCBS's arguments without merit.

## A

BCBS submits that there is a federal statutory requirement that medigap policies operate necessarily and exclusively in tandem with Medicare payments. BCBS bases its argument on the statutory definition of medigap policies. BCBS focuses on the language in the definition limiting the policies "to individuals who are entitled to have payment made under this subchapter" and limiting the reimbursements to those "for which payment may be made under this subchapter but which are not reimbursable by reason of ... deductibles, coinsurance amounts, or other limitations." 42 U.S.C. § 1395ss(g)(1). BCBS suggests that, because VA hospitals are not permitted to seek reimbursement from Medicare, *id.* §§ 1395f(c), 1395n(d), 1395y(a)(2) & (3), VA hospital patients are not entitled "to have payment under this subchapter," *id.* § 1395ss(g)(1), and therefore are not entitled to recovery under a medigap policy.

BCBS's interpretation of the definition of a medigap policy confuses a person's entitlement to Medicare benefits with her actual ability to collect those benefits. As discussed previously, a person may be over sixty-five, eligible for Social Security, and claiming a covered benefit, and thus entitled to Medicare reimbursement, yet still not receive reimbursement because she has not met a deductible, a coinsurance payment, or other limitation. Therefore, the patient may be entitled to Medicare benefits, but not permitted to collect those benefits. This situation is the chief impetus for purchasing a medigap policy.

The statutory exclusion of Medicare payments to VA hospitals provides a limitation to Medicare recovery but not to eligibility for the underlying benefits. Under the definition of a medigap policy, a veteran over sixty-five who collects Social Security and receives services or treatments covered under Medicare would be entitled to receive Medicare benefits but for his treatment in a VA hospital. The veteran's situation is not unlike two other circumstances where a medigap policy *will* pay despite the failure of Medicare to make reimbursement. Review of these situations when coverage occurs despite the unavailability of Medicare benefits demonstrates that BCBS has failed to establish that "[p]ayment under a Medicare Supplemental Contract is only triggered if Medicare provides payment or reimbursement for the incurred services...." Appellant's Brief at 16.

First, Medicare will not pay until other potential payers under a group health plan or workers' compensation program first make payments. 42 U.S.C. § 1395y(b)(2). If a workers' compensation claim covers all expenses possibly recoverable as Medicare benefits but excludes the deductibles and coinsurance amounts excluded by Medicare, then BCBS will be faced with a claim under its medigap policy for reimbursement for those unrecoverable amounts. BCBS will be asked to reimburse those amounts it would have reimbursed had Medicare acted as the primary payer, not workers' compensation. No terms of the BCBS medigap policies bar payment under this circumstance.

Second, Medicare declines payment for inpatient hospital services furnished to an individual in a hospital located outside the United States unless the hospital is "closer to, or substantially more accessible from, the residence of such individual than the nearest hospital within the United States." 42 U.S.C. § 1395f(f)(1). BCBS's medigap policies provide that

> [t]he Plan will pay for Medicare Approved Charges for necessary hospital and medical services furnished to you in a hospital or Skilled Nursing Facility outside of the United States. You must be covered under Medicare and payments under Medicare Part A would be made if these same services were furnished to you in the United States.

In essence, BCBS provides coverage in this instance when, but for the location of the treatment, the patient would have received Medicare benefits as well.

■ Although BCBS's interpretation that federal legislation mandates concurrent Medicare and medigap payments is misguided, BCBS is free to limit contractually its policies' coverage in such a manner so long as the terms do not discriminate in a way prohibited by 38 U.S.C. § 1729. Policy limitations may not create contractual terms or incorporate state statutes that exclude VA hospitals from coverage. BCBS suggests that its medigap policies are not discriminatory because the policies treat VA hospitals just as they would treat private hospitals that offered their services for free and because the NAIC standards suggested for medigap policies sanction the exclusion of VA hospitals.

Although no circuit court has yet addressed contractual discrimination, this circuit, as well as the Third and Sixth Circuits, have addressed state statutory discrimination. *See United States v. Ohio,* 957 F.2d 231, 233 (6th Cir.1992); *United States v. Maryland,* 914 F.2d 551, 554 (4th Cir.1990); *United States v. New Jersey,* 831 F.2d 458, 462–63 (3d Cir.1987). These three cases reviewed the application of a state act to compensate victims of crime. In each of the states, the compensation act

prohibited recovery for care furnished by a VA hospital or without charge.

In *Maryland,* we determined that the operation of the Maryland law discriminated against VA hospitals in violation of 38 U.S.C. § 1729, holding that:

> While it is true that on its face the Criminal Injuries Compensation Act does not discriminate against the federal government, in practice the Board's construction of the Act would prevent recovery by VA hospitals in virtually all cases....
>
> Congress' use of the word "operate" [in 38 U.S.C. § 1729(f) ] demonstrates its intent to prevent not only discrimination against the federal government which appears on the face of a state statute, but also discrimination which takes place in practice.... Because the Maryland Criminal Injuries Compensation Act's serious financial hardship requirement as applied here will operate in the vast majority of cases to prevent the federal government from recovering its costs in treating crime victims where a private hospital would be able to do so, the Act is in conflict with § [1729] and therefore is without force.

*Id.* at 552, 554.

More recently, the Sixth Circuit addressed the contention that discrimination does not occur if a private hospital would be treated similarly. Rejecting this comparison and nullifying the discriminatory statute, that court noted

> [t]he state says that the VA may not recover under this language because the state would not reimburse a crime victim/veteran who had been treated in a private hospital or other health care provider which did not charge for its services.... The economic reality is that private hospitals do not provide free medical treatment. Thus, the VA is, for all practical purposes, denied recovery under the state statute, while private hospitals are not.

*Ohio,* 957 F.2d at 233; *see also New Jersey,* 831 F.2d at 463 ("By requiring a veteran's claim to be viewed as if the veteran had sought non-federal care, Congress mandated that the cost of the VA's treat-

ment be viewed as the cost of a non-federal hospital, for which the veteran would have received a bill.").

In keeping with these precedents, BCBS must determine eligibility for medigap coverage as though the veterans had received care from a private billing hospital. The VA has replaced Medicare as the primary payer for services rendered to veterans, and BCBS must make a determination regarding coverage for those expenses Medicare would not have reimbursed. This interpretation of section 1729 and the medigap policies does not mandate coverage; it merely prohibits an exclusion from recovery based on a *per se* rejection of a class of potential recipients (*i.e.*, veterans), but still permits BCBS to exercise discretion in determining eligibility on a case-by-case basis. If a veteran's expenses were unreasonable or otherwise unsuitable as a Medicare benefit, BCBS can decline to reimburse that veteran, but BCBS cannot decline coverage to veterans as a class.

■ BCBS's reliance on the NAIC standards is similarly misguided. The NAIC standards do suggest that a state, when implementing its regulations to govern medigap policies, may limit covered health care providers in a manner to exclude VA hospitals. Yet this section of the NAIC standards does not control BCBS's policies for several reasons. First, Maryland did not enact this optional measure in the NAIC standards when promulgating its medigap guidelines, Md.Ann.Code art. 48A, §§ 468B–468GH (Supp.1992); therefore, the exclusion is not available to BCBS policies issued under the authority of Maryland law. Second, the NAIC standards, which are incorporated into the statutory definition of medigap policies by reference, 42 U.S.C. § 1395ss(a)(2), conflict with 38 U.S.C. § 1729's non-discrimination provision. The discretion granted in the NAIC standards to exclude VA hospitals from coverage under medigap policies directly contravenes the non-discrimination mandate of section 1729. Whether the NAIC standards have the force of law or not, any reference to them in establishing medigap policies must comply with section 1729.

Therefore, because the exclusive definition in the NAIC standards is permissive, it must give way to section 1729, which is obligatory. BCBS cannot successfully contend that the NAIC standards require it to disregard the expressed intent of Congress that issuers of insurance not discriminate against VA hospitals.

BCBS's suggested interpretation of the medigap policies operates to discriminate against VA hospitals, and that discrimination is rooted in BCBS's contract, not state or federal law. As evidence of this discriminatory intent, the policy states that payments will not be made for "[e]xpenses for services which are provided for or received in any Federal hospital or facility." We reject any interpretation of BCBS's contract or federal law suggested by BCBS that operates to deny reimbursement to VA hospitals.

### B

Alternatively, BCBS relies on tools of statutory construction and legislative history to suggest that a medigap policy is not a health-plan contract and thus not encompassed within the gamut of the nondiscrimination statute. BCBS makes a series of arguments to support this theory, all of which are meritless.

BCBS claims that section 1729's failure to prevent federal legislation's discrimination against VA hospitals supports its interpretation that section 1729 does not apply to medigap policies. The exclusion of Medicare benefits to VA hospitals in section 1729, BCBS suggests, dictates the exclusion of medigap reimbursements to VA hospitals. BCBS focuses on the limitation of section 1729's ban on discrimination to state law, ignoring the fact that the ban extends to private contractual terms as well. As discussed previously, the discrimination attempted by BCBS is contractual, not legislative, so Congress's decision to prohibit state but not federal statutes' discrimination against VA hospitals has no bearing on the inclusion of medigap policies in the definition of health-plan contracts.

■ BCBS characterizes the term "means" used to define health-plan con-

tract in 38 U.S.C. § 1729(i)(1) as having a narrowing effect on the definition of health-plan contract, suggesting that a health-plan contract can be only what the definition expressly states that it is and not what one may additionally infer from the definition. BCBS offers that Congress would have used the term "includes" if it had intended that the definition be given an expansive interpretation. In fact, the legislative history, if anything, undermines BCBS's argument. When Congress added health-plan contracts to section 1729 in 1986 as an available source of reimbursement, the Senate Budget Committee issued a section-by-section analysis of the amendment, commenting on the definition of health-plan contract as follows: "The Committee intends this definition to be construed broadly so as to achieve broad coverage under this section with respect to the types of health plans under which recoveries and collections may be sought." S.Rep. No. 146, 99th Cong., 2d Sess. 633 (1986), *reprinted in* 1986 U.S.C.C.A.N. 42, 576. This statement does not evince congressional intent to limit the definition of health-plan contract to the words of the legislation and thereby exclude medigap policies from the definition.

BCBS argues that, by excluding the Medicare program from the definition of health-plan contract, Congress intentionally excised the triggering mechanism of a medigap policy. This argument rests on the same logic BCBS tried to use to avoid the application of section 1729's non-discrimination provision to its medigap policies. As discussed earlier, a medigap policy is not by definition dependent on the payment of Medicare benefits. Clearly, medigap policies can be "triggered" without payment of a Medicare benefit, and Congress's decision to exclude Medicare [5] has no effect on the application of the term "health-plan contract" to medigap policies.

BCBS points to legislative history that compares the term "health-plan contract" in 38 U.S.C. § 1729(i) to an employer/employee group contract, which is a primary health insurance contract and not a supplemental contract. Because Congress decided to exclude employer/employee insurance plans from its definition of medigap policies, BCBS contends that although a health-plan contract can be an employer/employee group contract, a medigap policy cannot. Therefore, a medigap policy also cannot be a health-plan contract. This conclusion is not logical for two reasons. First, a health-plan contract represents more varieties of reimbursement mechanisms than a medigap policy. A health-plan contract, on the one hand, can include any agreement to provide or pay for health care including hybrid sources such as "Living Needs" life insurance policies that permit the insured to make an early claim on a death benefit at the time of a catastrophic illness or dental or optical policies that are considered not primary payers but insurers in the event of a particularized health problem. A medigap policy, on the other hand, is statutorily limited to a certain category of coverage. Therefore, comparison of the characterizations of the two terms serves no authoritative purpose. Second, Congress demonstrated in both the definition of health-plan contract, 38 U.S.C. § 1729(i)(1)(B)(i)–(iv), and the definition of Medicare supplemental policy, 42 U.S.C. § 1395ss(g)(1), that it wanted to place limitations on the terms. In each provision, Congress clearly delineated the circumstances not included in the definitions, and did not exclude expressly one term from the definition of the other. Congress amended the definition of Medicare supplemental policy in 1990, after the passage of section 1729, and could have excluded health-plan contract at that time but did not. Given Congress's proclivity, in defining these terms, to enumerate excluded items, its decision to exclude employer/em-

---

**5.** Although the legislative history does not speak to this decision, a safe assumption to be drawn from the exclusion of Medicare from the definition of health-plan contract is that Congress wanted to avoid the unnecessary transfer of federal funds from Medicare to the VA when the money is all coming out of the same coffer. BCBS's suggested interpretation requires us to read more than the desire for administrative efficacy into Congress's decision without supporting interpretative guidance such as committee reports or hearing transcripts.

ployee group contracts from the definition of Medicare supplemental policy does not suggest inferentially that Congress wanted to exclude medigap policies from the definition of health-plan contract.

 Finally BCBS argues that Congress's two unsuccessful attempts to amend section 1729(i) to include medigap policies within the definition of health-plan contract evinces a legislative intent to exclude medigap policies from the meaning of that term. In 1990 Congress amended section 1095 of title 10, chapter 55, dealing with the health care of the armed forces. Section 1095 permits the United States to collect from third-party payers, including insurance, medical service, and health plans, the reasonable cost of health care services incurred in the treatment of members of the armed forces. 10 U.S.C. § 1095(a)(1). The 1990 amendment details that "insurance, medical service, or health plan" includes an insurance plan described as Medicare supplemental insurance. *Id.* § 1095(h)(2).

On two occasions Congress has attempted to add similar language to section 1729, but the measures have not passed. S. 1271, 102d Cong., 1st Sess. § 2 (1991); S. 2455, 101st Cong., 2d Sess. § 5 (1990). BCBS claims that Congress's failure to pass the amendments indicates that Congress does not intend the definition of health-plan contract to include medigap policies. Because Congress's failure to pass the amendments also could signify its understanding that the definition of health-plan contract already includes medigap policies, we can infer little from congressional inaction alone. In this case, however, the legislative history suggests that Congress's intent in trying to pass the amendments was merely to clarify the definition of health-plan contract and not to broaden it. The following segments from debates on the measure best demonstrate the significance of Congress's efforts:

> While many insurers who offer these [medigap] plans reimburse VA, a number of insurers have taken the position that, because VA may not collect from Medicare, there is no liability on medigap policies.

> The specific reference to Medicare supplemental plans added by the bill is designed to allay any doubts as to whether medigap plans are required to reimburse VA under the program. For purposes of the recovery provisions in section [1729], medigap insurers must treat VA medical centers and personnel as if they were non-Federal hospitals and health care providers participating in the Medicare program.

> The medigap insurer must reimburse VA as if the claim has been previously submitted to and processed under Medicare. If the insurer is unable to determine its liability for the VA bill, it may instead make payment in an amount it can demonstrate to the satisfaction of the Secretary it would pay for the care and services if they had been furnished by a non-Federal Medicare provider.

137 Cong.Rec. S7471–01 (daily ed. June 11, 1991) (statement of Sen. Cranston); *see also* 136 Cong.Rec. S4568–01 (daily ed. Apr. 19, 1990) (statement of Sen. Cranston) (same language quoted in earlier debate). Congress appeared to want only to clarify section 1729 and not significantly alter it. Because Congress ultimately did neither, we reject BCBS's assertion that the proposed amendments to the definition of health-plan contract hold any significance.

With the failure of this final argument, BCBS falls short of establishing with any legal certainty that a medigap policy is not a health-plan contract. A health-plan contract need do only one of two things— provide health services or reimburse the expenses of such services. 38 U.S.C. § 1729(i)(1)(A). Without a doubt, medigap policies were designed to do just that by paying "benefits [which] are for services billed for by the hospital, physician, or provider." *See, e.g.*, Blue Cross and Blue Shield 65–Premium Contract, at 2. Therefore, we hold that BCBS's medigap policies are health-plan contracts governed by the non-discrimination and reimbursement mechanisms of section 1729.

## IV

BCBS of Maryland is one of seventy-three similar BCBS organizations through-

**728**

out the country. Twenty of the organizations currently reimburse the United States for services rendered at VA hospitals. BCBS's position demonstrates calculated discrimination against veterans and callous indifference to its obligations to premium-paying enrollees in its medigap programs. The insurance business always has involved precise allocations of financial risks; the insured pays a given amount at set intervals to assuage the untimely outlay of unexpected funds and the insurer designs programs to limit its risk of unanticipated claims. In this case, however, BCBS is knowingly selling policies under which it never intends to pay. Medigap policies are health-plan contracts, and the non-discrimination provisions of section 1729 apply to health-plan contracts to prevent the exclusion of VA hospitals from their coverage. Therefore, we affirm the district court's decision to grant the government's motion for summary judgment, and thereby permit the United States to pursue the veteran patients' claims under medigap policies.

AFFIRMED.