UNITED STATES of America

v.

CAPITAL BLUE CROSS, Appellant.

No. 92–7346.

United States Court of Appeals,
Third Circuit.

Argued Jan. 19, 1993.

Decided April 16, 1993.

Elizabeth A. Dougherty (argued), McNees, Wallace & Nurick, Harrisburg, PA, for appellant.

Stuart M. Gerson, Asst. Atty. Gen., James J. West, U.S. Atty., Jeffrey Axelrad, Roger D. Einerson and Colette J. Winston (argued), Attys., Torts Branch U.S. Dept. of Justice, Washington, DC, for appellee.

Before: STAPLETON, COWEN, Circuit Judges and DUBOIS, District Judge.[1]

## OPINION OF THE COURT

COWEN, Circuit Judge.

The issue in this case is whether the United States may recover from Capital Blue Cross ("Blue Cross") the reasonable costs of health care provided by a Department of Veterans Affairs ("VA") hospital to veterans insured under Blue Cross Medicare supplemental health insurance policies. The district court granted the United States' motion for summary judgment on the issue of Blue Cross' liability. We will affirm.

### I.

The material facts are undisputed. Five veterans named in the government's complaint received medical treatment for non-service-connected disabilities at the VA Medical Center in Martinsburg, West Virginia. At the time of treatment, each veteran was eligible to receive benefits under the Medicare program and was insured under a Blue Cross Medicare supplemental policy known as a "65–Special" policy. Medicare is a federal program, which provides medical insurance benefits to the elderly and the disabled. A Medicare supplemental or "medigap" policy is a privately-issued health insurance policy, which provides reimbursement for costs that Medicare would cover but for the applicability of deductibles, coinsurance amounts, or other limitations. *See* 42 U.S.C. § 1395ss(g)(1) (1988). The VA medical center submitted claims for reimbursement to Blue Cross pursuant to the Medicare supplemental policies Blue Cross had issued to the veterans. Blue Cross denied each of the claims and refused to pay any portion of the costs of the treatment furnished by the VA.

The United States brought this action under 38 U.S.C. § 1729 (Supp. III 1991) (formerly 38 U.S.C. § 629) seeking reimbursement and a declaratory judgment stating Blue Cross' liability. The United States alleged that Blue Cross violated section 1729 by failing to reimburse the VA for costs to the extent that Blue Cross would have reimbursed a non-federal provider of services. Blue Cross denied liability under its 65–Special policies and further denied that the 65–Special policies discriminated against the VA in favor of non-federal hospitals.

Both parties moved for summary judgment. The district court granted summary judgment to the United States and ordered Blue Cross to reimburse the government for reasonable costs incurred by the VA that a non-federal hospital would be eligible to recover. *United States v. Capital Blue Cross,* 796 F.Supp. 144, 154 (M.D.Pa.1992). This appeal followed.

### II.

■ We exercise plenary review over the district court's grant of summary judgment

1. The Honorable Jan E. DuBois, United States District Judge, Eastern District of Pennsylvania, sitting by designation.

and apply the same test employed by the district court. *Erie Telecommunications, Inc. v. City of Erie, Pa.,* 853 F.2d 1084, 1093 (3d Cir.1988). We can affirm only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Taylor v. Continental Group Change in Control Severance Pay Plan,* 933 F.2d 1227, 1231 (3d Cir.1991).

## A.

■ The United States argues that Blue Cross' refusal to reimburse the VA for any portion of its reasonable costs violates 38 U.S.C. § 1729 (Supp. III 1991) which provides:

(a)(1) Subject to the provisions of this section, in any case in which a veteran is furnished care or services under this chapter for a non-service-connected disability described in paragraph (2) of this subsection, the United States has the right to recover or collect the reasonable cost of such care or services ... from a third party to the extent that the veteran (or the provider of the care or services) would be eligible to receive payment for such care or services from such third party if the care or services had not been furnished by a department or agency of the United States.

Section 1729 further states that "[n]o law of any State ... and no provision of any contract or other agreement, shall operate to prevent recovery or collection by the United States under this section." 38 U.S.C. § 1729(f) (Supp. III 1991).

Section 1729 is an anti-discrimination statute, which seeks to put the United States in the same position as private hospitals in recovering the costs of medical services rendered to veterans for non-service-connected disabilities. As the legislative history explains:

The reported bill would strengthen and clarify the Veterans' Administration's authority to recover the costs of veterans' non-service-connected care ... where a veteran would have entitlement to a payment or reimbursement by a third party

for appropriate medical care furnished in a non-Federal hospital.

H.R.Rep. No. 97–79, 97th Cong., 1st Sess. 8 (1981), *reprinted in* 1981 U.S.C.C.A.N. 1685, 1693. Thus, section 1729 confers on the United States the right to recover costs an insurer would pay if the care had been provided by a private facility.

Blue Cross argues that its 65–Special policies exclude coverage for the costs sought by the United States not because the policies discriminate against VA facilities, but because the costs fail to meet the requirements for reimbursement under Medicare. Article III of the 65–Special policies excludes from coverage "[a]ny treatment, service or supply which would not or does not qualify for benefits under Medicare." App. at 158, 166, 177.[2] Likewise, the policies, which cover certain hospital benefits, define the term "hospital" in relevant part as "an institution which meets the Medicare requirements for a Hospital and participates in the Medicare program." App. at 155, 163, 174. With certain exceptions not applicable to the present case, VA facilities do not qualify to receive benefits under Medicare. *See* 42 U.S.C. §§ 1395f(c), 1395n(d) (1988).

Blue Cross further contends that the prerequisite of Medicare eligibility is non-discriminatory because it applies equally to private and federal facilities. As Blue Cross puts it:

Analysis of the Medicare Act and the determination of benefits payable thereunder is integral to analysis of the payment that must be made under [Blue Cross'] 65–Special Agreements; the public or private status of the hospital rendering the service is not.

Blue Cross Brief at 27. In support of its position, Blue Cross asserts that in situations where Medicare is specifically authorized by statute to make payments to a VA hospital, *see* 42 U.S.C. § 1395f(d), (h), Blue Cross likewise would pay.

While the 65–Special policies' requirement of Medicare eligibility might not discriminate against VA facilities in every case, the re-

---

**2.** The record contains three separate policies, a 1985–1988 policy, a 1988–1989 policy and a 1990 policy. Each one contains the same exclusion.

quirement precludes the VA from recovering costs that a non-federal hospital would be eligible to recover in this and the overwhelming majority of cases. The United States has produced an uncontradicted declaration by the Director of the Division of Hospitals of the Pennsylvania Department of Health stating that all private, general acute care hospitals licensed in Pennsylvania participate in Medicare. App. at 203. It is reasonable to assume, moreover, that most if not all private, general acute care hospitals nationwide also participate in Medicare. As Blue Cross conceded at oral argument, a private hospital would be eligible to recover the benefits that Blue Cross refuses to pay to the VA in nearly every instance. Because section 1729(a)(1) authorizes the United States to collect reasonable costs from a third party to the extent that a non-federal hospital would be eligible to recover, the United States is entitled to reimbursement in this case.

Blue Cross argues that a different outcome is warranted because unequal treatment of VA facilities is an indirect byproduct of the 65–Special policies' "interdependence on the Medicare program." *See* Blue Cross Brief at 27.[3] We disagree. Section 1729 provides that no law and no provision of any agreement "shall operate to prevent recovery or collection by the United States." 38 U.S.C. § 1729(f) (Supp. III 1991). Congress' use of the word "operate" manifests its intent not only to prohibit discrimination that appears of the face of an agreement or a statute, but also discrimination that occurs in practice. *See United States v. Maryland,* 914 F.2d 551, 554 (4th Cir.1990).

Our decision in *United States v. New Jersey; Violent Crimes Compensation Board,* 831 F.2d 458 (3d Cir.1987), illustrates that section 1729 proscribes seemingly non-discriminatory language that produces discriminatory effects. In that case, the Violent

Crimes Compensation Board refused to reimburse the VA for the costs of medical care provided to two veterans who were victims of crimes. The Board reasoned that because the VA hospital treated the veterans free of charge, the veterans did not suffer an out-of-pocket expense as required by the victims compensation statute. Applying section 1729, we held that the United States could not be denied reimbursement by virtue of the out-of-pocket expense requirement, because the requirement would not apply equally to non-federal hospitals, which charge for their services. *See id.* at 462–64; *accord United States v. Ohio,* 957 F.2d 231, 233 (6th Cir. 1992). We rejected as "inconsistent with economic reality" the Board's assumption that crime victims could receive care from a non-federal hospital free of charge. *Id.* at 462.

Although we held that the out-of-pocket expense requirement could not be applied to defeat a claim by the VA, we also stated that section 1729

> does not eliminate all prerequisites to recovery contained in state compensation statutes. It only requires that a state consider a veteran's claim as it would consider a claim by someone not treated in a VA hospital, but presenting the same injury, treatment, and surrounding circumstances, such as the existence or non-existence of insurance.

*Id.* Likewise, section 1729 does not invalidate all prerequisites to recovery contained in Blue Cross' 65–Special policies. This does not mean, however, that Blue Cross may impose medicare-eligibility as a prerequisite to recovery by a VA facility. Our decision in *Violent Crimes Compensation Board* stands for the proposition that an insurer may impose only such prerequisites as apply in a non-discriminatory manner to federal and non-federal providers.[4] Prerequisites that

---

**3.** In addition to a Medicare-eligibility requirement, the 65–Special policies contain an explicit exclusion for treatment rendered by a VA hospital free of charge. *See, e.g.,* App. at 158. Blue Cross does not argue that it is permissible under section 1729 to deny the VA's claims on the basis of this exclusion.

**4.** For example, Blue Cross may require that medical services be reasonable and necessary for the

diagnosis or treatment of illness or injury. Moreover, the government at oral argument conceded that the VA's claims are subject to a provision in the 65–Special policies stating that "[n]o action at law or in equity shall be commenced against Blue Cross for any claim under this Agreement unless brought within two years after the rendering of the services upon which such claim is based." *See* App. at 160, 168, 178–79.

operate to discriminate against federal providers are proscribed.

The court in *United States v. Maryland,* 914 F.2d 551 (4th Cir.1990), reached essentially the same conclusion. There, a hospital provided free medical care to two crime victims and was then denied reimbursement by the Crime Compensation Board because the treatment did not cause the victims to suffer "serious financial hardship." The district court held that the financial hardship requirement did not discriminate against the United States because it applied equally to victims treated at private hospitals. *Id.* at 552. The court of appeals disagreed, noting that private hospitals as a rule charge patients for services and would be able to recover. *Id.* at 554. The court held that the requirement violated section 1729 because it would "operate in the vast majority of cases to prevent the federal government from recovering its costs ... where a private hospital would be able to do so." *Id.*

Like the out-of pocket expenses requirement in *Violent Crimes Compensation Board* and the financial hardship requirement in *Maryland,* Blue Cross' Medicare-eligibility requirement operates to prevent recovery by a VA hospital, even though most or all nonfederal hospitals would be eligible to recover. Therefore, the requirement as applied to the VA violates section 1729 and cannot be invoked to deny the United States' claims for reimbursement. *See United States v. Blue Cross and Blue Shield of Maryland,* 989 F.2d 718, 723–725 (4th Cir.1993).

### B.

■ Section 1729 specifies that the statute's anti-discrimination provisions allow the United States to recover the costs of medical services rendered to a veteran "(i) who does not have a service-connected disability;[5] and (ii) who is entitled to care (or payment of the expenses of care) under a health plan contract." 38 U.S.C. § 1729(a)(2)(D) (Supp. III 1991). Blue Cross argues that the 65–Special policies are not "health plan contracts" as defined by section 1729. Section 1729 specif-

ically excludes from the term "health plan contract" an "insurance program described in section 1811 of the Social Security Act (42 U.S.C. § 1395c) or established by section 1831 of such Act (42 U.S.C. § 1395j)." *Id.* § 1729(i)(1)(B)(i). The "insurance programs" referenced in this exclusion are Medicare Parts A and B, respectively. Blue Cross contends that because Congress excluded Medicare, it also must have excluded Medicare supplemental policies, "which provide that payment will be made for services rendered to Medicare-eligible subscribers only." Blue Cross Brief at 30–31.

The language and legislative history of section 1729 establish that Congress intended the term "health plan contract" to include Medicare supplemental policies. Section 1729 defines a "health plan contract" in general terms as "an insurance policy or contract ... under which health services for individuals are provided or the expenses of such services are paid." 38 U.S.C. § 1729(i)(1)(A) (Supp. III 1991). As the legislative history states, "this definition [is] to be construed broadly so as to achieve broad coverage ... with respect to the types of health plans under which recoveries and collections may be sought." S.Rep. No. 99–146, 99th Cong., 2d Sess. 633 (1986), *reprinted in* 1986 U.S.C.C.A.N. 42, 576. Blue Cross' 65–special policies, which pay individuals for the expenses of health services, fit easily within this general definition.

Furthermore, the statutory exclusion on which Blue Cross relies is confined by its terms to the federal Medicare program and cannot be read to imply any exclusion for Medicare supplemental policies. Supporting this straightforward interpretation is a House Report, which describes the exclusion as follows:

> [R]ecovery may not be sought for care where the source of reimbursement is Medicare or Medicaid.... In the event the veteran has both Medicaid and private health insurance, the private health insurance would be payable in accordance with its terms,[6] but no reimbursement from

---

5. It is undisputed that the veterans named in the complaint have no service-connected disabilities.

6. Blue Cross argues that the phrase "payable in accordance with its terms" means that Blue Cross need not reimburse the government be-

Medicare or Medicaid could be obtained by the VA....

H.R.Rep. No. 99–300, 99th Cong., 1st Sess. 790 (1985). The legislative history thus reinforces that Congress did not intend to exclude private health insurance policies from the broad definition of "health plan contract" under section 1729. In this regard, Blue Cross' Medicare supplemental policies are not distinguishable from other private health insurance policies. We doubt that Congress intended to allow private insurers to bootstrap themselves into the exclusion for Medicare simply by linking certain health benefits to the requirements of the Medicare program.

As a policy matter, there is a logical reason why Congress would choose to place the federal Medicare program, but not private health insurance policies, beyond the reach of section 1729. Because Medicare is run by a federal agency, excluding Medicare from section 1729 avoids the inefficient procedure of having one arm of the federal government reimburse another. *See United States v. Blue Cross and Blue Shield of Alabama,* 791 F.Supp. 288, 289 (N.D.Ala.1992), *appeal docketed,* No. 92–6521 (11th Cir. June 15, 1992). No similar rationale justifies excluding private insurance policies, including Medicare supplemental policies.

■ Blue Cross advances three principal counterarguments to support its position that Congress did not intend section 1729 to apply to Medicare supplemental policies. First, Blue Cross asserts that applying section 1729 to such policies effectively would nullify the provisions of 42 U.S.C. § 1395ss, a federal statute known as the Baucus Amendment. The Baucus Amendment, which addresses issues relating to Medicare supplemental policies, defines a "medicare supplemental policy" as:

> [A] health insurance policy or other health benefit plan offered by a private entity to individuals who are entitled to

have payment made under this subchapter, which provides reimbursement for expenses incurred for services and items for which payment may be made under this subchapter but which are not reimbursable by reason of the applicability of deductibles, coinsurance amounts, or other limitations imposed pursuant to this subchapter....

42 U.S.C. § 1395ss(g)(1). According to Blue Cross, the statutory definition and other provisions in the Amendment establish medigap policies as supplemental, or secondary, to Medicare coverage. Requiring payment to the United States under section 1729 when no Medicare coverage is available, says Blue Cross, would implicitly repeal the Baucus Amendment by transforming 65–Special policies into primary rather than secondary health care policies.

Blue Cross' argument lacks merit. The benefits that Blue Cross would pay to the United States pursuant to section 1729 are not primary health benefits. Section 1729 entitles the United States to recover only "to the extent" that a non-federal provider would be eligible to recover. 38 U.S.C. § 1729(a)(1) (Supp. III 1991). Blue Cross therefore would be required to pay only those secondary costs that it would have paid to a private hospital participating in Medicare.[7] The only difference in the present case is that the VA would substitute for Medicare as the primary payor.

Requiring Blue Cross to make secondary or supplemental payments when the VA rather than Medicare pays the primary costs does not offend the Baucus Amendment. The Baucus Amendment nowhere suggests that a Medicare supplemental policy can pay benefits only when Medicare is the primary payor. Blue Cross hardly can argue otherwise, since its 65–Special policies specifically provide coverage in certain instances when no Medicare coverage is available. For example, the 65–Special policies cover outpa-

cause the "terms" of the 65–Special policies require Medicare-eligibility. This argument is specious. As discussed earlier, section 1729 proscribes any terms that discriminate in practice against VA facilities. *See supra* at 1273–74.

**7.** The district court's order states that Blue Cross shall pay the United States "an amount equal to

the portion of the cost of care that Medicare would not have paid with regard to the reasonable cost of care and services furnished to the five veterans named in the Complaint." App. at 273.

tient treatment rendered to Blue Cross subscribers who are not eligible to receive Medicare Part B payments and inpatient treatment in foreign hospitals that do not participate in Medicare. Such coverage, as Blue Cross concedes, is clearly "more than just supplementary to Medicare." Blue Cross Reply Brief at 6.

■ Blue Cross next argues that we should interpret section 1729 in accordance with the Department of Defense's ("DOD") interpretation of 10 U.S.C. § 1095 (1988 & Supp. III 1991), an analogous statute which entitles DOD to recover from third-party insurers the reasonable costs of medical services rendered by the military to its personnel. Section 1095, like section 1729, prohibits the collection of costs from Medicare. 10 U.S.C. § 1095(d). In 1990, DOD interpreted the exclusion of Medicare in section 1095 as implying a similar exclusion for Medicare supplemental policies. *See* 55 Fed.Reg. 21,-742, 21,746 (1990) (discussing DOD rule codified at 32 C.F.R. § 220.6(b) (1990)). Congress responded by amending section 1095 in 1990 to include explicitly Medicare supplemental policies within the statute's definition of "health plan." 10 U.S.C. § 1095(h)(2).

The United States argues that Congress amended section 1095 to correct an obvious error on DOD's part and to clarify the legislature's original intent to authorize recovery from Medicare supplemental policies. Blue Cross counters that DOD's interpretation was correct, and that Congress amended section 1095 in an effort to expand the statute to cover Medicare supplemental policies. Although the legislative history is inconclusive, we think that by amending section 1095 almost immediately after DOD published its interpretation, Congress signalled that DOD had adopted an unduly broad reading of the Medicare exclusion. This interpretation derives support from the text of the exclusion, which nowhere implies a concomitant exemption for privately issued health insurance policies. Because the available indicators suggest that DOD incorrectly interpreted section 1095 to exclude Medicare supplemental policies, we will accord DOD's interpretation no weight in construing the analogous provisions of section 1729.

In a related argument, Blue Cross maintains that implementing section 1095 as amended has caused DOD problems that the VA would experience if we were to interpret section 1729 to cover Medicare supplemental policies. Specifically, Blue Cross notes that if an insured is admitted to a Medicare participating facility within sixty days of being discharged from a military facility, a Medicare supplemental insurer could be required to pay two Medicare Part A deductibles—one "fictional" deductible to DOD pursuant to 10 U.S.C. § 1095 and a second "real" deductible to the Medicare participating facility. The reason for the second payment is that Medicare imposes a deductible at the beginning of every "benefit period." 42 C.F.R. § 409.-82(a)(1)–(2) (1992). A benefit period begins on the first day of hospitalization. *Id.* § 409.60(a). Although a second benefit period (requiring a second deductible payment) ordinarily would not begin until *after* the sixtieth consecutive day following the insured's discharge from a hospital, *id.* § 409.-60(b)(1), Medicare does not recognize treatment at a military facility as commencing a benefit period.

Even if correct, the foregoing does not prove that Congress intended to exclude medigap policies from section 1729. On the contrary, the fact that Congress specifically included medigap policies under an analogous reimbursement statute strongly suggests that Congress either was not concerned about or did not foresee the double-payment scenario that Blue Cross has identified.

Blue Cross also contends that recent failed attempts to amend section 1729 show that the statute excludes Medicare supplemental policies. In 1990, Senator Cranston introduced Senate Bill 2455. The Bill, which contained a provision that would have expressly included Medicare supplemental policies within the definition of the term "health plan contract," was never enacted. S. 2455, 101st Cong., 2d Sess. § 5 (1990). In 1991, Senator Cranston introduced another unsuccessful Bill, Senate Bill 1271, containing a similar amendment. S. 1271, 102d Cong., 1st Sess. § 2(b) (1991). Blue Cross argues that Congress' failure to amend section 1729 implies

that the proposed amendments are contrary to current law.

 As a general rule, Congress' rejection of a proposed amendment is not a significant aid in interpreting a statute passed years earlier. 2A N. Singer, *Sutherland on Statutory Construction* § 48.18 (5th ed. 1992). This case illustrates why. Blue Cross assumes that the proposed amendments would have expanded the reach of section 1729 to include Medicare supplemental policies. An at least equally likely assumption is that Congress originally intended to include medigap policies within the broad definition of the term "health plan contract," but controversy over the scope of the definition caused Congress to consider amending the statute to clarify its intent. *See Blue Cross and Blue Shield of Maryland,* 989 F.2d at 727–728. Accordingly, the failed amendments do not support the inference that Congress intended section 1729 as written to exclude Medicare supplemental policies.

## C.

 Blue Cross asserts that even if we decide section 1729 entitles the VA to recover from Blue Cross, we should allow reimbursement for services rendered by the VA only after the date of this court's decision. According to Blue Cross, the premiums for its 65–Special policies do not take into account payments to the VA under section 1729. Because the premium rates do not reflect claims by the VA, Blue Cross maintains that forcing the company to pay claims brought prior to this court's decision would subject the company to enormous underwriting losses.

Blue Cross essentially asks us to change the statute's effective date, April 7, 1986, to the date of our decision. Such legislative acts are for Congress, not the courts. Moreover, we see no reason to penalize the United States for Blue Cross' failure to structure its premiums to account for payments to the VA under section 1729. Such payments are mandated by the statute's plain language and should have been predicted.[8]

8. Undisputed evidence shows that Blue Cross and Blue Shields from nineteen states and the

## III.

Blue Cross' 65–Special policies are "health plan contracts" under section 1729 and operate in this case to prevent the VA from recovering health-care costs that a non-federal hospital would be able to recover. Accordingly, section 1729 entitles the United States to recover from Blue Cross the reasonable costs of care to the veterans named in the complaint to the extent that a non-federal hospital participating in Medicare would be eligible to recover. We therefore will affirm the judgment of the district court.

District of Columbia reimburse the VA under Medicare supplemental policies.